# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2784

_____

United States of America,          *
                                   *
            Appellee,              *
                                   *   Appeal from the United States
      v.                           *   District Court for the
                                   *   District of Nebraska.
Ramon Villa-Velazquez, also known as  *
Ramon Villa, also known as J. Ramon   *
Villa, also known as J. Ramon         *
Villa-Velazquez,                   *
                                   *
            Appellant.             *

_____

Submitted:  December 12, 2001

Filed:  March 6, 2002

_____

Before WOLLMAN,[1] Chief Judge, MURPHY, Circuit Judge, and BATTEY,[2] District Judge.

_____

WOLLMAN, Chief Judge.

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002.  He has been succeeded by the Honorable David R. Hansen.

[2]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota, sitting by designation.

Ramon Villa-Velazquez appeals from the district court's[3] denial of his motion to suppress. We affirm.

## I.

In March 2000, a confidential source notified the Scottsbluff, Nebraska, Police Department that Villa-Velazquez had illegally returned to the United States. Sergeant Ferguson of the Scottsbluff Police Department contacted the Immigration and Naturalization Service (INS) and was notified that, after it had run a check on Villa-Velazquez, the INS believed that he was in the United States illegally. The INS agent requested that Ferguson take Villa-Velazquez into custody if he was encountered. Fernandez was familiar with Villa-Velazquez from an earlier search of his residence, and he examined Villa-Velazquez's booking photograph to refresh his memory of his appearance.

Fernandez surveilled Villa-Velazquez's residence from an unmarked police car and approached the house after observing Villa-Velazquez through a window. A young girl answered his knock. Fernandez informed the girl that he wished to speak with Villa-Velazquez, whereupon the girl shut the door. While waiting outside the residence, Fernandez heard a noise from the back of the house. Fearing that Villa-Velazquez was attempting to flee, Fernandez walked around the corner of the house. Upon noting nothing unusual, Fernandez returned to the front of the house, where he observed that the girl was holding open the interior front door. Fernandez opened the closed screen door, entered the residence, and proceeded to arrest Villa-Velazquez with the aid of two other officers after Villa-Velazquez resisted arrest.

---

[3]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

Following Villa-Velazquez's arrest, the Scottsbluff Police Department notified the INS, whereupon an INS hold was placed with the jail. It was later determined that Villa-Velazquez was in fact in the country illegally. Villa-Velazquez was charged with unlawfully being in the United States after having been previously deported from the United States, a violation of 8 U.S.C. § 1326(a). A superseding indictment charged Villa-Velazquez with unlawfully being in the United States after having been deported from the United States following his conviction for an aggravated felony, a violation of 8 U.S.C. §§ 1326(a) and (b)(2). Villa-Velazquez filed a motion to suppress evidence obtained during his arrest, alleging that Fernandez was not authorized to make the arrest for the INS and that he had unlawfully entered Villa-Velazquez's home. The magistrate judge[4] denied that part of the motion that challenged Fernandez's authority to arrest, but suppressed some of the evidence after finding Fernandez did not have consent to enter the home. Adopting the magistrate judge's recommendations in part, the district court held that although Fernandez possessed authority to make the arrest, he was not authorized to enter Villa-Velazquez's residence to do so. The district court suppressed only that evidence which was obtained during the arrest. Villa-Velazquez subsequently entered a conditional plea of guilty, reserving the right to appeal the suppression order.

On appeal, Villa-Velazquez contends that the district court erred in failing to invalidate his arrest and in failing to suppress the evidence regarding his identity that was obtained during the time that he was held at the jail.

## II.

We review the district court's denial of a motion to suppress de novo. United States v. Holloway, 128 F.3d 1254, 1255-56 (8th Cir. 1997); United States v. Morgan,

---

[4]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

91 F.3d 1193, 1195 n.3 (8th Cir. 1996). We review for clear error the district court's factual findings. Holloway, 128 F.3d at 1256.

Villa-Velazquez argues that all evidence gained over the course of his detention should be suppressed because Fernandez was not authorized to arrest him. We find this argument to be without merit. Federal immigration law authorizes state and local officials to arrest and detain illegal aliens to the extent permitted by the relevant state laws, once the status of the alien has been confirmed by the INS. 8 U.S.C. § 1252c(a).[5] Nebraska law provides that "a peace officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed . . . a felony . . . ." Neb. Rev. Stat. § 29-404.02. Villa-Velazquez argues that this statute is inapplicable because Fernandez did not have reasonable cause to believe that Villa-Velazquez was guilty of a felony. We do not agree. The Nebraska Supreme Court has held that, as used in § 29-404.02, "reasonable cause to arrest without a warrant exists when a law enforcement officer has knowledge, based on information which is reasonably trustworthy under the circumstances, which justifies the officer's prudent belief that a suspect is committing, or has committed, a crime." State v. DeGroat, 508 N.W.2d 861, 865 (Neb. 1993) (citing State v. Van Ackeren, 495 N.W.2d 630 (Neb. 1993)). Sergeant Fernandez had received information from a confidential informant, which was confirmed by the INS, that Villa-Velazquez was

---

[5] 8 U.S.C. § 1252c(a) provides, in relevant part:

Notwithstanding any other provision of law, to the extent permitted by relevant State and local law, State and local law enforcement officials are authorized to arrest and detain an individual who –
    (1) is an alien illegally present in the United States; and
    (2) has previously been convicted of a felony in the United States and deported or left the United States after such conviction,
but only after the State or local law enforcement officials obtain appropriate confirmation from the Immigration and Naturalization Service of the status of such individual . . . .

committing the felony of being in the country illegally after deportation for commission of a felony. When coupled with Fernandez's familiarity with Villa-Velazquez's physical appearance, this information was sufficiently trustworthy to give Fernandez reasonable cause to arrest Villa-Velazquez.

The government does not challenge the district court's holding that Fernandez's entry into Villa-Velazquez's home violated his Fourth Amendment rights, nor its ruling suppressing the evidence gathered while officers were in the residence. The issue, then, is whether the identity information obtained post-arrest must also be excluded. Villa-Velazquez argues that this evidence should be suppressed as fruit of the poisonous tree because it was obtained through the exploitation of the initial illegal entry into his home. He contends that Brown v. Illinois, 422 U.S. 590 (1975), in which the Supreme Court held that a defendant's confession after an illegal arrest must be suppressed as the fruit of an illegal arrest, controls. Id. at 604-05. Brown is distinguishable, however, inasmuch as Fernandez had reasonable cause to arrest Villa-Velazquez. Rather, this case is governed by New York v. Harris, 495 U.S. 14, 18-19 (1990), in which the Court held that because the officers had probable cause to arrest Harris, his continued detention was not unlawful even though the initial nonconsensual arrest in his home without a warrant violated the Fourth Amendment, with the result that the statement that Harris made while he was in custody was admissible. Likewise, the evidence obtained during the time Villa-Velazquez was in lawful custody was not tainted by the earlier unlawful entry into his residence. As the Harris Court held, an initial illegal arrest does not require that the officers release and then re-arrest the defendant in order to continue with legal-custody proceedings. Id. at 18. See also United States v. Duchi, 944 F.2d 391, 395 (8th Cir. 1991). Accordingly, the district court did not err in denying the motion to suppress the evidence obtained during Villa-Velazquez's post-arrest custody.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.