# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 03-3192, 03-3195

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ANTOINE JOHNSON,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 02 CR 826, 02 CR 1215—**Robert W. Gettleman**, Judge.

_____

ARGUED JUNE 15, 2004—DECIDED AUGUST 18, 2004

_____

Before POSNER, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

POSNER, Circuit Judge. The defendant, convicted of drug and counterfeiting offenses in separate proceedings later consolidated, appeals only from the denial of his motion to suppress evidence that he contends was seized in violation of the Fourth Amendment. The appeal requires us to consider the scope of the "independent source" and "inevitable discovery" doctrines—doctrines that are so similar that we're not sure which one rules this case. The "independent source" doctrine allows the government to use evidence that

it obtained both illegally and legally, as when evidence first found in an illegal search is later rediscovered in a legal one. *Murray v. United States*, 487 U.S. 533, 537 (1988). The "inevitable discovery" doctrine allows the government to use evidence that it obtained illegally but would have obtained legally in any event. *Id.* at 539. The question in this case is whether it matters if the evidence seized illegally from the defendant had an alternative source in another *illegal* search but one that the defendant could not have challenged directly.

Proliferation of legal categories is a chronic problem for American law, as it deflects attention from practical to definitional concerns. The independent-source and inevitable-discovery doctrines are easily collapsed into the familiar rule of tort law that a person can't complain about a violation of his rights if the same injury would have occurred even if they had not been violated. To punish a person for an act that does no harm is not required in order to deter harmful acts. But this is in general, not in every case; the defendant, Antoine Johnson, is arguing in effect for an exception to the tort rule.

Johnson and two others were sitting in his parked car when two police officers approached. Without any grounds for an arrest or even a *Terry* stop, the officers ordered the three occupants to get out of the car. While one of the officers searched under Johnson's seat and found drugs there, the other officer searched the two passengers and found drugs and counterfeit money on their persons. The officers then searched the trunk and found more counterfeit money plus a color copier. Johnson contends that the evidence seized in the trunk should not have been used against him, since the police had no legal basis for seizing him and searching under his seat. (Neither Johnson nor the passengers consented to the searches.) The district court

disagreed, noting that irrespective of the drugs found under Johnson's seat, once drugs and counterfeit money were found on the passengers the police had probable cause to search the entire vehicle, as it was reasonable to suppose there might be additional drugs or counterfeit money elsewhere in it. See *United States v. McGuire*, 957 F.2d 310, 314 (7th Cir. 1992); *United States v. Thornton*, 197 F.3d 241, 249 (7th Cir. 1999); *United States v. Sink*, 586 F.2d 1041, 1047-48 (5th Cir. 1978); *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir. 1995). And had they done so they would have found Johnson's incriminating possessions in the trunk. The search of the passengers was illegal, but normally *A* cannot challenge the legality of the search of *B* even when the search produces information used to convict *A*. *Rakas v. Illinois*, 439 U.S. 128, 132-33 (1978); *United States v. Sanchez-Jaramillo*, 637 F.2d 1094, 1100 (7th Cir. 1980). The district judge concluded that the "injury" to Johnson—the use of the contraband found in his trunk to convict him—was not caused by a violation of *his* rights.

This would be correct if Johnson were trying to prevent the contraband seized from the passengers, as distinct from the trunk of car, from being used against him. (We do not know whether that evidence was used against them; only one of the two passengers was prosecuted federally, and he pleaded guilty before Johnson filed his motion to suppress.) But all he is trying to do is prevent the use of evidence seized from him—from the trunk of *his* car. And so the question is not his "standing" to challenge the use against him of evidence seized illegally from other people—no such evidence, to repeat, was used against him. It is whether the fact that an illegal search of other people would have turned up the evidence illegally seized from him should allow the government to use that evidence against him.

An affirmative answer would have the paradoxical effect that two illegal searches would make a legal search—in fact

would make two legal searches. For on the government's view, not only could the illegally seized evidence in the trunk be used against the victim of the illegal seizure; equally the evidence illegally seized from the two passengers could be used against the two of them, since once the police officers found the contraband in the trunk they would be entitled to arrest and search the passengers, who could not challenge the seizure from the trunk because it wasn't their car. The upshot is that when the victims of an illegal search are linked in such a way that evidence seized from one will provide grounds for a reasonable belief that the others also have evidence, the government's view would deprive the exclusionary rule of any deterrent effect.

This is a slight overstatement. The police were gambling when they conducted their illegal searches of the three occupants of Johnson's car. Had there been no contraband on Johnson's person or in the car itself but only in the pockets of the passsengers, the evidence seized from them could not have been used against them, though it might on the government's view be usable against Johnson if there were anything to link him to the activities of his two passengers. But in any case in which the police have a strong hunch (though not enough to enable them to obtain a warrant or to search without a warrant) that all the members of a linked group have some contraband, the police could, if the government is right, search all the members of the group without fear that any contraband found on them could not be used in evidence. Individual police officers would still have to worry about being sued for damages; but if damages were considered a completely adequate deterrent to violations of the Fourth Amendment, the exclusionary rule would have been abandoned long ago.

Consider this instructive analogy from tort law: the two defendants each start a fire, and the fires join and destroy

the plaintiff's house; either fire, however, would have destroyed his house. Each defendant could therefore argue that he should not be liable for the damage because it would have occurred even if he had not set his fire; but the law rejects the argument and makes both defendants liable, under the rubric of "concurrent causation." And so in the famous old case of *Cook v. v. Minneapolis, St. Paul & Sault Ste. Marie Ry.*, 74 N.W. 561, 564 (Wis. 1898), we read that "it is no defense for a person against whom negligence which causes damages is established, to prove that without fault on his part the same damage would have resulted from the negligent act of the other, but each is responsible for the entire damage." See also *Anderson v. Minneapolis, St. Paul & Sault Ste. Marie Ry.*, 179 N.W. 45, 49 (Minn. 1920); *Collins v. American Optometric Ass'n*, 693 F.2d 636, 640 n. 4 (7th Cir. 1982); *Housing 21, L.L.C. v. Atlantic Home Builders Co.*, 289 F.3d 1050, 1056-57 (8th Cir. 2002); *Sanders v. American Body Armor & Equipment, Inc.*, 652 So. 2d 883, 884-85 (Fla. App. 1995); *Garrett v. Grant School Dist. No. 124*, 487 N.E.2d 699, 706 (Ill. App. 1985); *Hart v. Browne*, 163 Cal. Rptr. 356, 363-64 (App. 1980); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 41, pp. 266-67 (5th ed. 1984). The tortfeasor cannot avoid liability by pointing to an alternative *unlawful* cause of the damage that he inflicted.

The concurrent-causation case may seem to differ from our case insofar as both fire makers violated the plaintiff's rights, whereas here the tortious search of Johnson's passengers did not violate Johnson's rights. But actually the issue is the same. A fundamental principle of tort law is that there is no tort without an injury, e.g., *Rozenfeld v. Medical Protective Co.*, 73 F.3d 154, 156 (7th Cir. 1996); *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267 (7th Cir. 1994), and so since neither fire was a sine qua non of the plaintiff's injury, it could be argued that neither fire maker had committed a tort. Tort law rejects this conclusion for the practical reason

that tortious activity that produces harm would go unsanctioned otherwise. The reason for denying liability when there is no causal relation between the violation of a duty and the harm of which the plaintiff is complaining is, as we noted earlier, that punishing a person for an act that does no harm is not needed to deter harmful acts. The reason fails when there is harm that would not have occurred had there not been unlawful acts.

Similarly, if police conduct an illegal search that does no harm because the same evidence would have been obtained lawfully, there is no need to punish them; but this assumes that the evidence would indeed have been obtained *lawfully*, for only then is there no harmful illegality. Consistent with this analysis, the canonical statements of the independent-source and inevitable-discovery doctrines uniformly refer to a "lawful" independent source and to "lawful" inevitable discovery. *Murray v. United States, supra*, 487 U.S. at 542; *Nix v. Williams*, 467 U.S. 431, 444 (1984); *United States v. Gravens*, 129 F.3d 974, 979-80 (7th Cir. 1997); *United States v. Lee*, 356 F.3d 831, 835 (8th Cir. 2003); *United States v. Tueller*, 349 F.3d 1239, 1244-46 (10th Cir. 2003); *United States v. Akridge*, 346 F.3d 618, 623-24 (6th Cir. 2003); *United States v. Davis*, 332 F.3d 1163, 1171 (9th Cir. 2003); *United States v. Moore*, 329 F.3d 399, 405 (5th Cir. 2003).

These cases are not in conflict with the cases cited earlier that bar a defendant from challenging evidence seized in violation of someone else's rights. See also *United States v. Payner*, 447 U.S. 727 (1980). The evidence challenged here *was* seized in violation of the defendant's rights—it was taken from underneath Johnson's seat and from the trunk. The government's argument is that the violation is cancelled by the fact that the evidence would have been discovered as a consequence of the illegal search of the passengers, to which he could not object. The fallacious character of the argument

is demonstrated by the fact that if the passengers tried to exclude the evidence in their own cases, they would be met by the identical argument: the evidence would have been discovered in an illegal search (that of Johnson) to which they cannot object. In the ordinary case in which a defendant would like to get mileage from challenging the illegal search of a third party, that party, at least, can challenge the search. But the government's position is that because there were two illegal searches in this case no one can invoke the exclusionary rule against the use of the evidence obtained by the searches. In other words, the more illegal searches there are, the narrower is the scope of application of the exclusionary rule. We cannot see what sense that makes.

Yet the only similar case that we have found, *United States v. Scott*, 270 F.3d 30 (1st Cir. 2001), disagrees that the evidence must be suppressed in such a case. The court in *Scott* acknowledged both that "the Supreme Court and this Circuit have invariably stated the doctrine of inevitable discovery as requiring inevitable discovery by 'legal' or 'lawful' means," *id.* at 43, and that "the application of the inevitable discovery exception to this case would allow the government to benefit at least somewhat from the unconstitutional actions of the Natick police—and if here there were two illegalities rather than one, that arguably strengthens rather than weakens the need for suppression as a means of deterrence." *Id.* at 44. Despite these acknowledgments, the court ruled that the illegality of the independent source should be only a relevant and not a dispositive factor. The ultimate question, the court held, should be whether the application of the independent-source rule in the particular circumstances of the case would give the police an incentive in future such cases to commit similar illegal acts; and the court decided that it would not. *Id.* at 45. The illegal independent source had been a statement given by a suspect who had not been read the *Miranda* warnings, and the court

emphasized that the question whether he was entitled to those warnings was close and that the officer was trying to get evidence against the person he was questioning and had no thought that the questioning might provide an independent source of the evidence that had been obtained from the defendant illegally.

The First Circuit's analysis is at once complex and spongy, as well as inconsistent with the logic of the independent-source/inevitable-discovery doctrine. That doctrine (or if one prefers pair of Siamese twin doctrines) merely recognizes that if there is a lawful basis for the seizure of some evidence, the fact that the seizure was also based on illegal acts need not trigger punishment, because the acts did no harm (no harm so far as obtaining the evidence was concerned— there might be collateral damage, remediable by suits under 42 U.S.C. § 1983 or state tort law, to property or privacy interests of the defendant). There is a need for punishment when the only basis for the seizure of the evidence is a series of illegal acts. The assumption that the independent source must be "lawful" is thus not merely an accidental dictum; it is part of the essential logic of the rule and of its origins in fundamental principles of tort law.

The search of Johnson's car led to a further search, of a motel room that he had occupied, and of his home; and evidence seized in those searches was also used against him. The district judge did not consider whether there might be a lawful independent source for that evidence; this is an issue for consideration on remand.

Because our decision creates an intercircuit conflict, it was circulated to the full court in advance of publication, pursuant to 7th Cir. R. 40(e). No judge voted to hear the case en banc.

REVERSED AND REMANDED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*