# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-4618

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSE ROCHE-MARTINEZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04-CR-639-1—**Harry D. Leinenweber**, *Judge.*

ARGUED SEPTEMBER 6, 2006—DECIDED OCTOBER 19, 2006

Before FLAUM, *Chief Judge*, and BAUER and POSNER, *Circuit Judges.*

FLAUM, *Chief Judge.* Jose Roche-Martinez pleaded guilty to being in the United States after being deported following a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). Special Agent Mark DeTolve and Officer Constantino Poulakis arrested Roche-Martinez in a garage behind his mother's residence after entering the property without a search warrant or an arrest warrant. Roche-Martinez filed a motion to quash his arrest and suppress illegally seized evidence. The district court denied the motion and sentenced Roche-Martinez to 57 months in prison, refusing to award Roche-Martinez a sentence below the guideline range on the basis of his cultural assimilation

or the lack of a fast-track program in the Northern District of Illinois. Roche-Martinez appeals his sentence and the district court's denial of his motion to suppress. For the following reasons, we affirm the judgment of the district court.

## I. BACKGROUND

Jose Roche-Martinez came to the United States in 1974 with his mother, Sylvia Castro, who is a United States citizen. His younger brother, wife, and three children are all American citizens. On February 8, 2002, Roche-Martinez was deported to Mexico based upon felony convictions for residential burglary and the delivery of a controlled substance.

In April or May of 2004, Roche-Martinez illegally reentered the United States with the help of a "coyote," a guide that undocumented immigrants pay to help them cross the United States' border with Mexico. On May 8, 2004, an anonymous tip notified authorities that Roche-Martinez was living at 4342 South Ashland Avenue in a garage behind his mother's house. On June 7, 2004, Immigrations and Customs Enforcement (ICE) Special Agent Mark DeTolve received a packet from his supervisor explaining the anonymous tip. The packet contained the results of a ChoicePoint database search, which listed 4342 South Ashland Avenue as an address that Roche-Martinez previously had used. Agent DeTolve discovered that Roche-Martinez had not reentered the United States at any legitimate point of entry, and had not applied for an adjustment of status. Agent DeTolve requested a hard copy of Roche-Martinez's Alien-File, which contained an executed warrant of removal with Roche-Martinez's photograph.

On June 28, 2004, Agent DeTolve visited 4342 South Ashland to ascertain the layout of the property. While in his vehicle, Agent DeTolve observed a person

fitting Roche-Martinez's description taking a mattress from a vehicle parked behind the house toward the yard of the residence. Agent DeTolve parked his vehicle and walked to the back of the residence to confront the individual. However, the vehicle parked in the back of the residence was gone before Agent DeTolve arrived.

On June 30, 2004, Agent DeTolve returned to 4342 South Ashland Avenue to show the residence to his partner, Officer Constantino Poulakis. They planned to arrest Roche-Martinez the next day. On July 1, 2004, at approximately 6:30 a.m., the two officers arrived at the residence. They found the gates to the residence locked, so they entered a neighbor's yard to get a better look at the 4342 South Ashland residence. From the yard next door, Agent DeTolve observed that the back door of the residence was open. Officer Poulakis hopped over the fence while Agent DeTolve went to the back gate of 4342 South Ashland Avenue. Officer Poulakis opened the gate for Agent DeTolve. Officer Poulakis told Agent DeTolve that an "old man" inside the house told him that Roche-Martinez was in the garage. The officers knocked on the garage and a shed attached to the garage.

Roche-Martinez's wife opened the door and gave the officers permission to enter. The officers observed Roche-Martinez, his wife, his son, two beds, and a dresser. The officers did not have a search warrant or an arrest warrant. The parties stipulated that Sylvia Castro, Roche-Martinez's mother, did not give the officers permission to enter her yard or residence.

Following Roche-Martinez's arrest, the government charged him with unlawfully being in the United States after being previously deported, a violation of 8 U.S.C. § 1326(a). Roche-Martinez filed a motion to quash his arrest and suppress evidence obtained during his arrest, alleging that Agent DeTolve and Officer Poulakis had unlawfully

entered the garage to arrest him. The district court found that there were many ways the government could have proven Roche-Martinez's presence in the United States on July 1 and denied Roche-Martinez's motion. On August 9, 2005, Roche-Martinez pleaded guilty under 8 U.S.C. § 1326(a) and (b)(2), reserving the right to appeal the denial of his motion.

Pursuant to recommendations from both sides, the district court gave Roche-Martinez a three level reduction for acceptance of responsibility. Prior to sentencing, Roche-Martinez asked the district court to consider his cultural assimilation and the lack of a fast-track program in the Northern District of Illinois as two additional bases for a downward adjustment. The district court denied both requests and sentenced Roche-Martinez to 57 months in prison, the low end of the guideline range.

On appeal, Roche-Martinez contends that the district court erred in failing to invalidate his arrest and in failing to suppress the evidence regarding his identity, which the government obtained while he was in custody. He also contends that the district court erred by refusing to award him a downward adjustment based on his cultural assimilation or on the absence of a fast-track program.

## II. DISCUSSION

### A.

When reviewing an appeal from a district court's denial of a motion to suppress, we review legal conclusions de novo and findings of fact for clear error. *United States v. Robeles-Ortega*, 348 F.3d 679, 681 (7th Cir. 2003) (citing *United States v. Yang*, 286 F.3d 940, 944 (7th Cir. 2002)).

Roche-Martinez claims that because Agent DeTolve and Officer Poulakis illegally entered his home on July 1, 2004, all evidence of his presence in the United States on that day

is the fruit of that illegal search and must be excluded. Moreover, he argues that without the evidence of his presence, the Court must quash his arrest. For purposes of this appeal, we assume the entry was illegal.

This case is governed by *New York v. Harris*, 495 U.S. 14, 18 (1990), in which the Supreme Court held that unlawful entry into the home of a criminal defendant does not make the defendant's subsequent detention unlawful if probable cause existed to arrest the defendant. In *Harris*, the Court "decline[d] to apply the exclusionary rule . . . because the rule in *Payton* [which held that the Fourth Amendment prohibits the police from effecting a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest] was designed to protect the physical integrity of the home; it was not intended to grant criminal suspects . . . protection for statements made outside their premises where the police have probable cause to arrest the suspect for committing a crime." *Id.* at 17.

The Court distinguished *Brown v. Illinois*, 422 U.S. 590 (1975), and its line of cases in which courts suppressed statements made following arrests that lacked probable cause. *Harris,* 495 U.S. at 18-19. Here, Agent DeTolve and Officer Poulakis had probable cause to arrest Roche-Martinez. ICE received an anonymous tip regarding Roche-Martinez's unlawful presence at 4342 South Ashland Avenue. Agent DeTolve confirmed Roche-Martinez's prior deportation and failure to apply for reentry, reviewed photographs of Roche-Martinez, and observed him on June 28, 2004 at the Ashland address. Agent DeTolve also verified that Roche-Martinez had used the Ashland address prior to his 2002 deportation. Consequently, even though Agent DeTolve and Officer Poulakis did not have a warrant or consent to enter the residence, Roche-Martinez's subsequent detention was lawful and the district court correctly ruled that the evidence collected during Roche-Martinez's detention, namely, his identity, was admissible, and not

tainted by the earlier unlawful entry into his mother's residence.

The Eighth Circuit has applied the *Harris* decision in a case with comparable facts to those now before this Court. *See United States v. Villa-Velazquez*, 282 F.3d 553 (8th Cir. 2002). In *Villa-Velazquez*, a Nebraska police department received information that Villa-Velazquez had illegally returned to the United States after being deported following a felony conviction. An officer illegally entered Villa-Velazquez's home and arrested him without a search or an arrest warrant. Villa-Velazquez moved to suppress the identity information obtained after his arrest as fruits of the poisonous tree.

On appeal from denial of his motion, the Eighth Circuit, citing *Harris*, said that "an initial illegal arrest does not require that the officers release and then re-arrest the defendant in order to continue with legal-custody proceedings." *Id.* at 556 (citing *Harris*, 495 U.S. at 18). It then held that identity information obtained after an arrest supported by probable cause is admissible under *Harris*. *Id.* We agree with the Eighth Circuit's application of *Harris* in this context.

Roche-Martinez claims that *United States v. Johnson*, 380 F.3d 1013 (7th Cir. 2004), requires reversal of the district court's ruling. In *Johnson*, police officers conducted two illegal searches; one officer illegally searched under the defendant's car seat, and one officer illegally searched two passengers. The illegal search of the passengers led police to more evidence in the defendant's trunk, which the government used against the defendant. We held that the inevitable discovery doctrine did not apply because the source of the evidence used against the defendant, the search of the passengers, was illegal itself. *Id.* at 1017. *Johnson* does not apply here because the government was lawfully aware of Roche-Martinez's presence in the United

States prior to, and independent of, the illegal entry. Moreover, Roche-Martinez's illegal presence could have been proven absent the illegal entry. Once he was taken outside the house, detained, and fingerprinted, he was still present in the United States on July 1, 2004.

Though *Harris* precludes relief from Roche-Martinez's criminal conviction, we note, as did the district court, that our holding in no way sanctions Agent DeTolve's or Officer Poulakis' decision not to seek a search or an arrest warrant. Justice Marshall, dissenting in *Harris*, warned that under the *Harris* rule, a logical police officer will make a rational choice to violate the Constitution rather than first obtaining a search or arrest warrant, because the "evidence will be admissible regardless of whether it was the product of [an] unconstitutional arrest." *Harris*, 495 U.S. at 32 (Marshall, J., dissenting). There were no exigent circumstances here. Agent DeTolve and Officer Poulakis spent several days planning Roche-Martinez's arrest. They surveyed his residence twice over several days before arresting him and Agent DeTolve observed Roche-Martinez outside the residence on June 28, three days before the arrest. There existed ample opportunity to obtain either a search or an arrest warrant. Despite our unease regarding the facts of this case, Justice Marshall's opinion is not the law, and *Harris* controls our decision.

**B.**

Roche-Martinez claims it was unreasonable under 18 U.S.C. § 3553 to sentence him within the guideline range as calculated by the district court. In accordance with *United States v. Booker*, 543 U.S. 220, 261 (2005), we review a district court's sentence to ensure it is reasonable. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). A sentence that is properly calculated under the sentencing guidelines is presumptively reasonable. *Id.*

Roche-Martinez argues that his sentence is unreasonable because the district court refused to award him a sentence below the advisory guideline range for his cultural assimilation. The district court ruled that there was no "basis for any lesser harm or cultural assimilation in [Roche-Martinez's] background that would be sufficient to overcome his very serious criminal history as a person who is not a citizen of this country and is here illegally." November 16, 2005 Tr. at 11. Although case law indicates that some courts have awarded downward departures based on cultural assimilation, *see United States v. Martinez-Alvarez*, 256 F. Supp. 2d 917, 921 (E.D. Wisc. 2003); *United States v. Reyes-Campos*, 293 F. Supp. 2d 1252, 1257 (M.D. Ala. 2003), the district court was well within its discretion to consider Roche-Martinez's criminal past and deny him any downward adjustment. Congress has recognized that society has an increased interest in keeping aliens who have committed crimes out of the United States following their deportation. *See United States v. Gonzalez*, 112 F.3d 1325, 1330 (7th Cir. 1997) (noting that Guideline 2L1.2(b)(1)(A)'s aggravated felony enhancement reflects the seriousness of the crime committed, because "it [is] particularly troublesome to have illegal aliens returning who are not just illegal aliens, but also criminals."). Therefore, the district court did not abuse its discretion by deciding that Roche-Martinez's prior felonies outweighed his cultural assimilation.

Roche-Martinez also argues that his sentence is unreasonable because the absence of a fast-track program in the Northern District of Illinois has resulted in an unfair sentencing discrepancy. We have already rejected this argument. *See United States v. Galicia-Cardenas*, 443 F.3d 553, 555 (7th Cir. 2006) ("[W]e cannot say that a sentence imposed after a downward departure is by itself reasonable because a district does not have a fast-track program . . . ."); *United States v. Martinez-Martinez*, 442 F.3d 539, 542 (7th Cir. 2006) ("Given Congress' explicit recognition that fast-

track procedures would cause discrepancies, we cannot say that a sentence is unreasonable simply because it was imposed in a district that does not employ an early disposition program."). Given this precedent, we find Roche-Martinez's argument without merit.

### III. CONCLUSION

For the above stated reasons, we AFFIRM the judgment of the district court.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*