In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2264

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANGEL PACHECO-DIAZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 866—**Samuel Der-Yeghiayan,** *Judge.*

ARGUED NOVEMBER 27, 2006—DECIDED OCTOBER 23, 2007

Before EASTERBROOK, *Chief Judge*, and ROVNER and
SYKES, *Circuit Judges.*

ROVNER, *Circuit Judge.* Angel Pacheco-Diaz ("Pacheco")
was convicted of one count of reentering the United States
after previously having been deported, in violation of
8 U.S.C. §§ 1326(a) and (b)(2). In calculating Pacheco's
sentence, the district court applied an eight-level en-
hancement because he had a prior conviction for an
aggravated felony. After allowing a two-level reduction
for acceptance of responsibility, the court declined to
reduce Pacheco's sentence an additional level under that
same provision. The court also refused to adjust Pacheco's
sentence downward for what he argued was an
unwarranted disparity compared to similarly situated

defendants who were sentenced in "fast-track" jurisdictions. The court sentenced Pacheco on the high end of the resulting sentencing range, to a term of forty-six months' imprisonment. We affirm.

**I.**

The indictment alleged that Pacheco, an alien, was deported on October 10, 2003, following a conviction for an aggravated felony. On or about September 1, 2004, he was found in Waukegan, Illinois, having reentered the United States without the express consent of the Attorney General, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Pacheco waived his right to a jury trial and opted instead for a bench trial on stipulated facts. The parties stipulated that Pacheco was convicted on or about January 24, 2002, of possession of marijuana, in violation of 720 ILCS 550/4, and criminal damage to government property, in violation of 720 ILCS 5/21-4. Pacheco admitted that these crimes are felonies under Illinois law, and the government conceded that the marijuana possession would be a misdemeanor under applicable federal law. The parties did not agree whether the drug offense constituted an aggravated felony for sentencing purposes. Pacheco stipulated that, after he served his sentence for these Illinois crimes, he was deported. He conceded that he later returned to the United States without the consent of the Attorney General, and it is that return that makes up the charges in the present case. In this appeal, Pacheco contends that his prior Illinois conviction for simple possession of marijuana is insufficient to trigger the eight-level enhancement under either of two theories advanced by the government. He also argues that the district court misapprehended the scope of its discretion when it declined to further reduce his sentence for acceptance of responsibility. And finally, he posits that his sentence

was unreasonable because the court failed to meaning-fully consider the unwarranted disparity between his sentence and the sentences of similarly situated defendants in fast-track jurisdictions.

**A.**

Section 2L1.2 of the Sentencing Guidelines provides that the base offense level for a violation of 8 U.S.C. § 1326 is eight. If the defendant previously was deported after a conviction for an aggravated felony, the court is directed to increase the base offense level by eight levels. U.S.S.G. § 2L1.2(b)(1)(C). The Application Notes to the guideline provide that, for the purposes of subsection (b)(1)(C), the term "aggravated felony" has the meaning given that term in 8 U.S.C. § 1101(a)(43). That section defines an extensive list of crimes as aggravated felonies, but the only subsection relevant to Pacheco is 1101(a)(43)(B), which applies to "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." Section 924(c) defines the term "drug trafficking crime" as, among other things, "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.)." No one disputes that marijuana is a controlled substance. The government and the probation officer preparing the Presentence Report ("PSR") both suggested to the district court that Pacheco's January 2002 conviction for possession of marijuana warranted an eight-level increase as a drug trafficking crime. The district court agreed, finding two alternate justifications for the increase under section 2L1.2. First, the court parsed the phrase "felony punishable under the Controlled Substances Act" and found that the January 2002 conviction was a felony under Illinois law. The court found that the same conduct was also punishable under the Controlled Substances Act ("CSA"), albeit as

a misdemeanor. The court thus found this conviction met the definition of a drug trafficking crime because it was a felony and it was punishable under the CSA. In the alternative, the court found, Pacheco's January 2002 conviction for marijuana possession would be treated as a federal felony under the recidivist provision of 21 U.S.C. § 844(a). In October 2000, Pacheco pled guilty to another charge of possession of marijuana. Pursuant to section 844(a), the court held, the second possession conviction in January 2002 could have been treated as a felony punishable under the CSA. The court therefore concluded that the eight-level enhancement was appropriate.

Pacheco argued that the word "felony" could not be extracted from the phrase "felony punishable under the Controlled Substances Act" in this artificial manner. He suggested that the state's classification of the crime was irrelevant and that only crimes that would constitute felonies under federal law could trigger the eight-level increase. The Supreme Court recently agreed, holding that "a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under federal law." *Lopez v. Gonzales*, 127 S. Ct. 625, 633 (2006). Thus, the district court's first rationale for the eight-level increase was in error. However, the district court's alternate holding, that the January 2002 marijuana possession would be treated as a felony under the recidivist provision in light of the October 2000 possession conviction, passes muster under *Lopez* and our prior holdings. Specifically, the *Lopez* Court noted in footnote six that "Congress did counterintuitively define some possession offenses as 'illicit trafficking.' Those state possession crimes that correspond to felony violations of one of the three statutes enumerated in § 924(c)(2), such as possession of cocaine base and recidivist possession, see 21 U.S.C. § 844(a), clearly fall within the definitions used by Congress in 8

U.S.C. § 1101(a)(43)(B) and 18 U.S.C. § 924(c)(2), regardless of whether these federal possession felonies or their state counterparts constitute 'illicit trafficking in a controlled substance' or 'drug trafficking' as those terms are used in ordinary speech. But this coerced inclusion of a few possession offenses in the definition of 'illicit trafficking' does not call for reading the statute to cover others for which there is no clear statutory command to override ordinary meaning." *Lopez*, 127 S. Ct. at 630 n.6. The Court thus acknowledged that, although it seemed counterintuitive to classify recidivist possession as "illicit trafficking," Congress had clearly done so.

The circuits are split on the use of the recidivist provision at issue here. The Ninth Circuit stands alone in holding that the district court must consider the sentence available for the crime itself, without considering separate recidivist enhancements, when determining whether the crime would be an aggravated felony under federal law. *United States v. Arellano-Torres*, 303 F.3d 1173, 1178 (9th Cir. 2002). Thus, when determining whether a drug offense qualifies as an aggravated felony, the courts of the Ninth Circuit "disregard § 844's penalties for repeat offenders." *Id*. The Second, Fifth and Sixth Circuits came to the opposite conclusion; all apply the recidivist provisions of section 844(a) in determining whether a defendant's prior state misdemeanor conviction could be considered an aggravated felony for the purposes of guideline 2L1.2. *See United States v. Simpson*, 319 F.3d 81, 85-86 (2d Cir. 2002); *United States v. Sanchez-Villalobos*, 412 F.3d 572, 576-77 (5th Cir. 2005), *cert. denied*, 546 U.S. 1137 (2006); *United States v. Palacios-Suarez*, 418 F.3d 692, 700 (6th Cir. 2005).

This latter view is more consistent with our holding in *United States v. Perkins*, 449 F.3d 794 (7th Cir.), *cert. denied*, 127 S. Ct. 330 (2006). In *Perkins*, the issue was

whether a defendant could be classified as an armed career criminal under 18 U.S.C. § 924(e), based on three prior state court convictions for "serious drug offense[s]." 449 F.3d at 795. The term "serious drug offense" included "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii); *Perkins*, 449 F.3d at 796. Under state law, Perkins faced a maximum term of seven years for his first conviction for delivering less than one gram of cocaine, in violation of 720 ILCS 570/401(d). But the maximum increased to fourteen years for his second conviction. Perkins argued that the government could not show that he would have faced that fourteen year maximum for his subsequent offense because state law required judges to inform persons pleading guilty about the extra penalties for recidivism, and the papers submitted to the federal district court did not show that Perkins had received that notice. 449 F.3d at 796.

We rejected that argument for three reasons, one of which is especially relevant here. Relying on the Supreme Court's decision in *Shepard v. United States*, 544 U.S. 13 (2005), and *Taylor v. United States*, 495 U.S. 575 (1990), we held that federal recidivism statutes like section 924(e) "call for an evaluation of the crime of conviction, not the defendant's actual conduct or the details of the proceedings in state court. Whether a state conviction justifies a federal recidivism enhancement depends on the elements of the offense and the terms of the indictment or information." *Perkins*, 449 F.3d at 796. *See also Taylor*, 495 U.S. at 602 (a court sentencing under the ACCA could look to statutory elements, charging documents, and jury instructions to determine whether an earlier conviction after trial was for generic burglary); *Shepard,*

544 U.S. at 16 (a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented). Perkins stood convicted of two drug crimes that under state law exposed him to fourteen years in prison, and that was the number to use to determine whether his drug crimes were "serious" for the purposes of section 924(e)(1). *See also United States v. Henton*, 374 F.3d 467, 470 (7th Cir. 2004) (it is irrelevant under ACCA whether a defendant who is eligible for an extended sentence under a recidivist provision actually received an extended sentence; what matters is the sentence that the state statute made possible).

This same reasoning applies to the recidivist provision under section 844(a). Had Pacheco been charged in federal court with his second drug possession charge, he would have been eligible for a recidivist enhancement under section 844(a). The recidivist enhancement would have exposed Pacheco to a possible sentence of two years' imprisonment, a felony under federal law. As a felony punishable under the Controlled Substances Act, the second state law possession conviction would constitute a "drug trafficking crime" under section 924(c) had it been charged in federal court. In turn, that conviction would be considered an aggravated felony as that term is defined in 8 U.S.C. § 1101(a)(43)(B), thereby warranting an eight-level increase under guideline 2L1.2(b)(1)(C). Thus, the district court's second rationale correctly supported the eight-level increase.

**B.**

The government agreed that Pacheco was entitled to a two-point acceptance of responsibility reduction be-

cause he agreed to a bench trial on stipulated facts. Pacheco contends on appeal that he was entitled to a third point. Under the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("PROTECT Act"), the third point may be granted only upon a motion by the government.[1] The government

---

[1] *See* Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, § 401(g) (2003). That section directly amends the relevant guidelines provisions:

(g) REFORM OF GUIDELINES GOVERNING ACCEP-TANCE OF RESPONSIBILITY.—Subject to subsection (j), the Guidelines Manual promulgated by the Sentencing Commission pursuant to section 994(a) of title 28, United States Code, is amended—

(1) in section 3E1.1(b)—

(A) by inserting "upon motion of the government stating that" immediately before "the defendant has assisted authorities"; and

(B) by striking "taking one or more" and all that follows through and including "additional level" and insert "timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level";

(2) in the Application Notes to the Commentary to section 3E1.1, by amending Application Note 6—

(A) by striking "one or both of"; and

(B) by adding the following new sentence at the end: "Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing."; and

(continued...)

declined to move for the third point because of the effort expended preparing for trial before the agreement on a stipulated bench trial was reached. Pacheco argues that the district court misapprehended its post-*Booker* discretion when it stated that, in calculating Pacheco's guidelines sentence, it could not grant an additional one point reduction for acceptance of responsibility without a motion from the government. *See United States v. Booker*, 543 U.S. 220 (2005).

At Pacheco's sentencing hearing, the government told the court that it had mistakenly indicated in its United States' Sentencing Memorandum that a three-point reduction for acceptance of responsibility was appropriate. In fact, the government intended to agree only to a two-point reduction. *See* R. 24, at 6. The district court sought clarification, commenting, "The one-point reduction obviously has to made by—on the motion of the government. I was merely wondering what was your thinking about going two-point reduction for acceptance of responsibility and not going that extra one point." Sentencing Tr. at 12. The government explained that it expended a great deal of time and effort in reaching the agreement for a stipulated trial with Pacheco, and that the government had been forced by the looming trial date to prepare for trial in case an agreement could not be reached. The court reiterated the necessity of the government's motion, stating, "I cannot tell the government to make a motion for one further point of reduction. That's up to the government and you have explained why you did not move." Sentencing Tr. at 14. The court then turned to defense counsel and asked if she had any comments on the issue of acceptance of

---

[1] (...continued)
(3) in the Background to section 3E1.1, by striking "one or more of".

responsibility, and she replied, "No, your Honor." Sentencing Tr. at 15.

That answer was consistent with the position Pacheco had taken in his Objections to the PSR and Sentencing Memorandum (hereafter "Objections"). *See* R. 22. In his Objections, Pacheco stated, "Parties also agree that Mr. Pacheco-Diaz, despite requesting a bench trial, has accepted responsibility for his conduct under the language of § 3E1.1(a), as he did not dispute the key elements of the crime, but rather, proceeded in order to preserve a legal issue. PSR at 2. Therefore, a 2 level decrease in his offense level is appropriate in accord with the 'Acceptance of Responsibility' section of the Guidelines." R. 22, at 4. At the sentencing hearing, Pacheco's counsel argued that, in fixing a sentence within the guidelines range, the court could consider the fact that Pacheco did not receive that third point reduction for acceptance of responsibility. Counsel asked the court not to punish Pacheco for the time and effort it took the lawyers to reach the agreement for a stipulated trial. Before ruling, the court stated again, "[T]here is a two-level decrease because of adjustment of acceptance of responsibility and there's no dispute about that." Sentencing Tr. at 29. After considering all of the arguments of counsel and the section 3553(a) factors, the court sentenced Pacheco to a term of forty-six months' imprisonment, at the high end of the guidelines range.

Pacheco's counsel did not argue at the sentencing hearing that the court was misapprehending its discretion when it stated that the third point could be granted only on the motion of the government. At the sentencing hearing, Pacheco's counsel remained silent when asked about the third point. Indeed, Pacheco affirmatively agreed in his Objections that a two-level decrease for acceptance of responsibility was appropriate. Ordinarily, this affirmative concession would constitute waiver of

the issue and that would preclude our review. *United States v. Murphy*, 406 F.3d 857, 860 (7th Cir. 2005). In this case, however, the government has waived waiver by asserting that we should review the sentence for reasonableness and by addressing the issue on the merits. *Murphy*, 406 F.3d at 860. Specifically, the government argues that, after *Booker*, the district court must, as a first step, calculate correctly the guidelines sentencing range and then apply the section 3553(a) factors. According to the government, in correctly calculating the guidelines sentence, the court may grant the third point for acceptance of responsibility only on the motion of the government. The government is correct that, after *Booker*, the first step in sentencing is to calculate correctly the guidelines range. *United States v. McMahan*, 495 F.3d 410, 426 (7th Cir. 2007); *United States v. Hawk*, 434 F.3d 959, 963 (7th Cir. 2006). *See also United States v. Rita*, 127 S. Ct. 2456 (2007). This court has not yet decided in a post-*Booker* setting whether a district court may grant a third point for acceptance of responsibility absent a motion by the government. As far as we can tell, every circuit to consider the issue has agreed with the government's position here. *See United States v. Chase*, 466 F.3d 310, 315 (4th Cir. 2006) (because the guidelines authorize the third-level reduction only upon motion of the government, a district court is correct not to grant the reduction in the absence of a motion, even following *Booker*); *United States v. Espinoza-Cano*, 456 F.3d 1126, 1134 n.10 (9th Cir. 2006) (the prerequisite government motion in subsection (b) of section 3E1.1 is a statutory requirement that the district court must apply in its calculations under the guidelines, regardless of the advisory nature of the guidelines post- *Booker*); *United States v. Moreno-Trevino*, 432 F.3d 1181, 1185-87 (10th Cir. 2005) (prosecutors retain discretion to move or not move for a third point acceptance of responsibility reduction post-*Booker*); *United*

*States v. Smith*, 429 F.3d 620, 628 (6th Cir. 2005) (even after *Booker*, a district court consulting the guidelines remains constrained in awarding a § 3E1.1(b) reduction absent a motion by the government); *United States v. Smith*, 422 F.3d 715, 726-27 n.3 (8th Cir. 2005), *cert. denied*, 546 U.S. 1127 (2006) (under the PROTECT Act, there is no basis for a district court to grant the third level reduction *sua sponte*). We agree that, in calculating the correct guidelines range, the district court may not grant the third level reduction for acceptance of responsibility absent a motion by the government. The government expressly declined to move for the third point reduction and so the district court correctly calculated the guidelines range here. There is no indication in the record that, after correctly calculating the guidelines range, the court then misapprehended its discretion under *Booker* when it applied the section 3553(a) factors to choose a particular sentence. We therefore reject Pacheco's claim that the court misunderstood the scope of its authority.

## C.

Finally, Pacheco complains that the district court failed to consider the unwarranted sentencing disparity that resulted from his lack of access to a fast-track program. Fast-track programs were created to address the enormous number of illegal reentry cases that occur in certain border states. As part of the PROTECT Act, Congress expressly approved the use of these programs, granting authority to the U.S. Attorney General to create and implement the programs. *United States v. Galicia-Cardenas*, 443 F.3d 553, 555 (7th Cir. 2006). We have repeatedly rejected arguments that a sentence is unreasonable solely because it was imposed in a jurisdiction that does not make use of fast-track programs. *See United*

*States v. Roche-Martinez*, 467 F.3d 591, 595 (7th Cir. 2006), *cert. denied*, 127 S. Ct. 1861 (2007) (because Congress contemplated that fast-track programs would create disparities, a sentence is not unreasonable simply because it is imposed in a district that does not employ fast-track programs); *Galicia-Cardenas*, 443 F.3d at 555 ("[W]e cannot say that a sentence imposed after a downward departure is by itself reasonable because a district does not have a fast-track program . . . ."); *United States v. Martinez-Martinez*, 442 F.3d 539, 542 (7th Cir. 2006) ("Given Congress' explicit recognition that fast-track procedures would cause discrepancies, we cannot say that a sentence is unreasonable simply because it was imposed in a district that does not employ an early disposition program."). Pacheco gives us no reason to depart from these prior holdings, and we decline to do so. These are the only challenges that Pacheco raised to the reasonableness of his within-guidelines sentence. We therefore affirm the judgment of the district court.

AFFIRMED.

A true Copy:

　　　　Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*