In the

# United States Court of Appeals

### For the Seventh Circuit

————————

No. 05-3093

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

ALEJANDRO GALICIA-CARDENAS,

*Defendant-Appellee.*

————————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05-CR-18—**J.P. Stadtmueller**, *Judge.*

————————

No. 05-3486

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTELMO VEGA-LOPEZ,

*Defendant-Appellant.*

————————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05-CR-068-S—**John C. Shabaz**, *Judge.*

————————

SUBMITTED FEBRUARY 8, 2006[Œ]—DECIDED MARCH 24, 2006[ŒŒ]

_____

Before MANION, KANNE, and EVANS, *Circuit Judges.*

PER CURIAM. We consolidate these two cases for decision because they raise the same issue. In the first case, Alejandro Galicia-Cardenas was charged in a single-count indictment alleging that he entered the United States without permission after having previously been deported following a 1994 conviction for an aggravated felony—second degree robbery in Los Angeles. Galicia-Cardenas entered a guilty plea to the charge in the Eastern District of Wisconsin. Vega-Lopez was charged with the same offense, but his aggravated felony was a 1997 conviction for possession of marijuana for sale, ironically (we assume) also in Los Angeles. He entered a guilty plea to the charge in the Western District of Wisconsin. Vega-Lopez appeals his sentence. The government appeals the sentence Galicia-Cardenas received.

Both judges in these post-*Booker* cases appropriately consulted the guidelines and treated them as advisory. Vega-Lopez's properly calculated guideline range was 27 to 33 months. The court imposed a sentence of 30 months. Galicia-Cardenas, who had a prior conviction for a crime of violence, fared worse under the guidelines as his

---

[Œ] These two cases were scheduled to be argued before our panel on February 8, 2006. On February 2, 2006, we vacated the arguments after concluding that they were unnecessary. Thus, the appeals are submitted on the briefs and the records. *See* Fed. R. App. P. 34(a)(2).

[ŒŒ] This decision was originally released as an unpublished order. Upon the government's motion, we now issue it as a published opinion.

properly calculated advisory range was 41 to 51 months. His sentence, however, was 27 months, 3 months less than the term Vega-Lopez received.

In sentencing Mr. Galicia-Cardenas, the judge concluded that because the Eastern District of Wisconsin has not implemented a fast-track program to prosecute illegal reentry cases, the use of such programs in other districts created an unwarranted sentencing disparity between Galicia-Cardenas and other immigration offenders. As a result, the judge adjusted Galicia-Cardenas's sentence downward the equivalent of 4 levels and arrived at the 27-month sentence. In sentencing Mr. Vega-Lopez, the district court declined to bestow a similar benefit on him because a fast-track program is not used in Wisconsin.

In 1994, the Southern District of California—a district which saw more than 600,000 arrests annually at its border with Mexico in the early 1990s—adopted an early disposition or "fast-track" program. *See* Alan D. Bersin, *Reinventing Immigration Law Enforcement in the Southern District of California*, 8 Fed. Sentencing Rep. 254 (1996). Soon, other "border" states followed suit with fast-track programs of their own.

In 2003, Congress formally approved the use of fast-track programs. As part of the "Prosecutorial Remedies & Other Tools to End the Exploitation of Children Today Act" (the "PROTECT Act"), Congress granted the Attorney General the sole authority to create and implement fast-track programs. *See* Pub. L. No. 108-21, § 401(m)(2)(B), 117 Stat. 650, 675 (2003).

Although the general goal of the PROTECT Act was to reduce downward departures, Congress directed the Sentencing Commission to promulgate a policy statement authorizing a departure of not more than 4 levels when a defendant resolved his case through a fast-track program authorized by the Attorney General.

In a recent decision, *United States v. Martinez-Martinez*, 2006 WL 722140 (7th Cir. March 23, 2006), we rejected a claim that the defendant's 41-month sentence (the low end of the advisory guideline range) was unreasonable because Indiana does not have a fast-track program. We went on to observe, "Given Congress' explicit recognition that fast-track procedures would cause discrepancies, we cannot say that a sentence is unreasonable simply because it was imposed in a district that does not employ an early disposition program." By the same logic, we cannot say that a sentence imposed after a downward departure is by itself reasonable because a district does not have a fast-track program. Because *Martinez* controls these cases, we must affirm the sentence imposed in Vega-Lopez's case (he raises no other arguments suggesting that his sentence is unreasonable) and vacate the sentence Mr. Galicia-Cardenas received. Mr. Galicia-Cardenas must be resentenced without a credit for Wisconsin's lack of a fast-track program. Whether he deserves a sentence below the advisory guideline range based on other factors is left to the discretion of the district court.

I<small>T</small> I<small>S</small> S<small>O</small> O<small>RDERED</small>.

A true Copy:

      Teste:

                              _____
                              *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*