**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 28, 2009
Decided July 17, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 08-2886

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Eastern District |
| | of Wisconsin. |
| *v.* | |
| | No. 2:07-cr-00264-CNC-1 |
| JULIO ORTEGA-VARGAS, | |
| *Defendant-Appellant.* | Charles N. Clevert, Jr., |
| | *Judge.* |

**O R D E R**

Julio Ortega-Vargas was convicted of illegally reentering the United States after being deported subsequent to committing an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2), and sentenced to 53 months' imprisonment. He appeals his sentence, which we affirm.

Ortega-Vargas, a Mexican citizen, illegally entered the United States in 1988 as a teenager. In 1993, he was convicted of battery for severely beating his girlfriend. He later beat the same woman, violating a court order to avoid contact with her. Also in 1993, he was fined for resisting or obstructing an officer. In 1998, Ortega-Vargas was convicted of disorderly conduct and sentenced to 90 days in jail. That same year, he was convicted on three counts of

manufacturing and delivering cocaine. An immigration judge ordered Ortega-Vargas removed from the United States in 1999 because of his drug trafficking convictions. He was removed to Mexico in 2000.

In 2002, Ortega-Vargas illegally reentered the United States. He was arrested in November 2003 in connection with a controlled narcotics purchase and identified himself as Gabriel S. Cucique, giving a false date of birth as well.[1] In May 2004, he was convicted in a Wisconsin state court of possession with intent to deliver cocaine and marijuana; he was sentenced to four years' imprisonment.

The Bureau of Immigration and Customs Enforcement (ICE) knew of Ortega-Vargas' identity and location by 2004 at the latest, but for some reason did not notify the United States Attorney's Office of his return to the United States until August 2007. In October 2007, Ortega-Vargas was indicted on a single count of being found in the United States in violation of 8 U.S.C. § 1326. He eventually pleaded guilty.

Ortega-Vargas made two main arguments at his sentencing hearing that also form the bases for this appeal. First, he claimed that if the government had not waited so long to prosecute him, he could have requested, and may have received, a federal sentence that ran concurrently with his ongoing state sentence, which had concluded by the time he was sentenced in his federal case. Ortega-Vargas argued that he should receive a reduced sentence because of this lost opportunity. His second argument was that the district court should consider the disparity between sentencing in districts with and without so-called fast-track programs for illegal reentry defendants who quickly plead guilty and waive certain rights (Wisconsin does not have a fast-track program). After briefing and a hearing, the district court rejected both arguments for a reduced sentence.

On appeal, Ortega-Vargas acknowledges that we review a district court's sentence for reasonableness. *United States v. Vaughn*, 433 F.3d 917, 924 (7th Cir. 2006). But he argues that the district court misunderstood the law surrounding these two issues so that it did not realize its options and the case must be remanded for a proper sentencing analysis. As to the lost opportunity to seek a concurrent sentence, Ortega-Vargas argues that the district court was wrong when it stated that if Ortega-Vargas had been charged when first discovered by ICE, so that there was no prosecutorial delay, the Guidelines at that time "generally called for as a matter of policy a consecutive sentence so there would be incremental punishment." Read in context, however, the district court was simply observing that Ortega-Vargas' drug crimes

---

[1] It appears that Ortega-Vargas may have provided his real name when he was booked at the police station.

and reentry crime are not related so that they might naturally be punished concurrently. Its very next sentence states: "This is not a case where your client's drug offense . . . was part and parcel of the re-entry case." This is a reasonable observation. We have stated "that every separate violation of law deserves a separate sanction, so that no violation shall go unsanctioned." *United States v. Hill*, 48 F.3d 228, 232 (7th Cir. 1995). It is true that the drug convictions are completely independent of the illegal reentry conviction[2] and while this does not preclude a concurrent or partially concurrent sentence, *see id.* at 232-33, it was not unreasonable to consider.

The district court next observed that Ortega-Vargas was attempting to avoid detection by using an alias in connection with his most recent drug case and "would, in effect, be given a reward if he were to receive a concurrent sentence for the illegal re-entry." Ortega-Vargas sought the benefit of a reduced sentence on the basis that he lost the opportunity to request a concurrent sentence when he was discovered too soon, but tried too late, for his liking. The district court was not wrong to consider this when denying Ortega-Vargas' request for a reduced sentence.

Finally, the court went on to state that "as a practical matter, given the background that has been spread on the record and set forth in the presentence report, at least in this Court it's not likely that a concurrent sentence would have been imposed." On this basis, the court decided not to reduce Ortega-Vargas' sentence based on the lost opportunity to request a concurrent sentence that the district court likely would not have given anyway because of Ortega-Vargas' background. The district court considered Ortega-Vargas' argument and did not indicate that it was precluded from reducing his sentence based on prosecutorial delay, but it ruled on the merits to deny a reduction in this case.

Ortega-Vargas' second argument is that the district court falsely believed it was prohibited from considering the fast-track disparity because Ortega-Vargas had a prior battery conviction, which the government characterized as a "crime of violence" that might prevent Ortega-Vargas from receiving a fast-track disposition even in some districts that utilize fast-track programs. Ortega-Vargas claims that his battery conviction is not a "crime of violence" as that term is relevant to fast-track programs and that, even if it was, it would not preclude him from receiving a fast-track disposition. We need not resolve this argument because the record does not indicate that the district court felt prohibited from reducing Ortega-Vargas' sentence to

---

[2] Ortega-Vargas argues that the Guidelines' offense level calculation takes into account the prior convictions of an illegal reentry defendant, citing U.S.S.G. § 2L1.2. But § 2L1.2 only considers the drug crimes that preceded Ortega-Vargas' deportation, not the ones committed after his return. Neither does U.S.S.G. § 5G1.3(b) apply because the most recent drug convictions did not increase the offense level for the illegal reentry.

account for this disparity. The court listened to and engaged Ortega-Vargas' argument, but ultimately ruled on the merits

> that the defendant in this case because of his criminal history and because of the fact that he has a prior violent felony[3] as well as drug convictions, especially the one which landed him in jail recently here in Wisconsin, does not warrant a four level reduction in terms of the guidelines or in connection with any sentence that might be imposed. And so I am rejecting your fast track argument.

Again, this does not demonstrate that the district court thought itself to be precluded from considering the fast-track argument, only that it was not inclined to grant a further sentencing reduction in this case because of Ortega-Vargas' history. Because the district court rejected the proposed reduction on the facts of this particular case and the history of this particular defendant, we do not need to consider any effect *Kimbrough v. United States*, 552 U.S. 85 (2007), may have had on *United States v. Martinez-Martinez*, 442 F.3d 539 (7th Cir. 2006) (district court not unreasonable in refusing to reduce sentence based on fast-track disparity), or *United States v. Galicia-Cardenas*, 443 F.3d 553 (7th Cir. 2006) (error to reduce sentence based on fast-track disparity).

It is clear from the record that the district court considered Ortega-Vargas' legal arguments, but ultimately ruled on the merits of the case in front of it. The court simply found that, because of his criminal history, Ortega-Vargas should not receive a further-reduced sentence. Ortega-Vargas does not argue that the court lacked the authority to exercise its discretion in this way. We **AFFIRM**.

---

[3] The government reminded the district court that Ortega-Vargas' battery conviction was actually a misdemeanor, to which the court responded: "Yes. It was a misdemeanor, but it certainly was a case where the defendant kicked a woman in the face and knocked out her teeth. It's a violent crime. And I can't overlook the facts associated with that particular offense."