In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 09-1249 & 09-1551

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAIME REYES-HERNANDEZ,

*Defendant-Appellant.*


UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PEDRO SANCHEZ-GONZALEZ,

*Defendant-Appellant.*


Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 1:08-cr-00658 & 1:08-cr-00609—**Samuel Der-Yeghiayan**
and **Matthew F. Kennelly**, *Judges.*


ARGUED NOVEMBER 13, 2009—DECIDED OCTOBER 7, 2010

Before KANNE and TINDER, *Circuit Judges*, and GRIESBACH, *District Judge*.[*]

KANNE, *Circuit Judge*. The Supreme Court's decision in *Kimbrough v. United States*, 552 U.S. 85 (2007), taken together with other recent cases, has rekindled debate about whether sentencing disparities created by fast-track programs can be considered by district court judges in non-fast-track districts when crafting individual sentences. We address that issue today. Because both cases present the same issue on appeal, we consolidate them for the purpose of our review.

In the first case, Jaime Reyes-Hernandez pled guilty for illegally re-entering the United States after he had been removed twice following a conviction for the aggravated felony of robbery. The district court sentenced him to forty-one months' imprisonment, the most lenient sentence available under the applicable guideline range for his offense level and criminal history category. In the second case, Pedro Sanchez-Gonzalez pled guilty to illegally re-entering the United States after being removed following a conviction for the aggravated felony of domestic battery. The district court sentenced him to seventy-seven months' imprisonment, which was at the lowest end of the guidelines range for his offense level and criminal history category.

In both cases, the district court refused to even consider imposing below-guidelines sentences, thereby refuting

---

[*] Hon. William C. Griesbach, District Judge for the Eastern District of Wisconsin, sitting by designation.

defendants' claims that they should receive lesser sentences based on comparisons to sentences imposed on similarly situated individuals prosecuted in "fast-track" districts. Both defendants ask us on appeal to abandon our precedent and provide district courts with the latitude to consider fast-track-type sentences as part of their 18 U.S.C. § 3553(a) analyses. For reasons stated below, we grant their requests. We therefore vacate both sentences and remand to the district court for resentencing.

## I. BACKGROUND

### A. Case No. 09-1249, Jaime Reyes-Hernandez

Jamie Reyes-Hernandez is a native and citizen of Mexico. In 1998, he was convicted of robbery in the United States, an aggravated felony, and sentenced to four years in prison. One year following his conviction, he was released from prison and removed to Mexico. He returned to the United States shortly thereafter, but he was again removed to Mexico in 2005. In July of 2008, authorities found Reyes-Hernandez once again in the United States without permission from the Attorney General.

Following his 2008 arrest, Reyes-Hernandez was indicted for and pled guilty to illegally re-entering the United States after being removed in violation of 8 U.S.C. § 1326(a) and (b)(2). The pre-sentence report (PSR) calculated Reyes-Hernandez's advisory guideline range at forty-one to fifty-one months' imprisonment

based on a total offense level of twenty-one and a criminal history category of II.

Prior to the sentencing hearing, Reyes-Hernandez submitted a sentencing memorandum objecting to the PSR and requesting a below-guidelines range sentence of twenty-four months—the equivalent of a four-level reduction from the PSR's total offense level of twenty-one. Reyes-Hernandez argued that the district's lack of a fast-track program created an unwarranted sentencing disparity, and that the court had authority to consider and grant a departure under *Kimbrough*. Reyez-Hernandez argued that geography was the only difference between him and other defendants who received lower sentences.

At the sentencing hearing, Judge Der-Yeghiayan delivered a comprehensive oral statement addressing his consideration of the sentencing factors in 18 U.S.C. § 3553, as well as the parties' oral and written submissions. The judge then addressed Reyes-Hernandez's fast-track sentencing disparity argument. Citing *United States v. Galicia-Cardenas*, 443 F.3d 553, 555 (7th Cir. 2006), the judge said that "the Seventh Circuit has addressed and rejected this very argument," concluding that such discrepancies or disparities are not unreasonable. (App. at 19.) The judge then sentenced Reyes-Hernandez to forty-one months' imprisonment, the lowest end of the advisory guidelines range.

### B. Case No. 09-1551, Pedro Sanchez-Gonzalez

Pedro Sanchez-Gonzalez's case is factually similar to Reyes-Hernandez and presents the same issue on

appeal. Sanchez-Gonzalez is a Mexican citizen who was arrested in 2005 for theft and illegal re-entry following removal pursuant to a conviction of domestic battery, an aggravated felony, in violation of 8 U.S.C. § 1326(a). He waived the indictment and pled guilty pursuant to a plea declaration.

The imprisonment guideline range for Sanchez-Gonzalez was seventy-seven to ninety-six months, based on a total offense level of twenty-one and a criminal history category of VI. Sanchez-Gonzalez requested a below-guidelines sentence of fifty-one months, arguing that under 18 U.S.C. § 3553(a)(6), a within-guidelines sentence would create an unwarranted disparity with similar defendants in fast-track districts. He also argued that the district court had authority under § 3553(a)'s parsimony clause to consider the existence of disparities created by fast-track programs when determining an appropriate sentence.

Judge Kennelly entered a memorandum opinion discussing Sanchez-Gonzalez's request for a below-guidelines sentence. Although Judge Kennelly found that he was bound by our decisions in *Galicia-Cardenas* and *United States v. Martinez-Martinez*, 442 F.3d 539 (7th Cir. 2006)—and was not therefore permitted to take into account the fast-track argument—he opined that "as a matter of policy . . . it is unjust to permit sentencing disparities based on the fortuity of the judicial district in which a defendant in an illegal reentry case is charged." (App. at 8.) Sanchez-Gonzalez was sentenced to seventy-seven months' imprisonment, the bottom of the guidelines range.

## II. ANALYSIS

### A. Standard of Review

On appeal, we review a district court's sentence for reasonableness, *United States v. Booker*, 543 U.S. 220, 260-62 (2005); *United States v. Vaughn*, 433 F.3d 917, 923-24 (7th Cir. 2006), under an abuse of discretion standard, *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Scott*, 555 F.3d 605, 608 (7th Cir. 2009). We presume that a sentence within a properly calculated guidelines range is reasonable, but "there is no corresponding presumption of unreasonableness for a non-guidelines sentence." *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008) (*citing United States v. Omole*, 523 F.3d 691, 696 (7th Cir. 2008)). Moreover, we review *de novo* a district court's interpretation of the guidelines. *United States v. Diekemper*, 604 F.3d 345, 355 (7th Cir. 2010); *see also United States v. Dote*, 328 F.3d 919, 925 (7th Cir. 2003) ("We review a district court's determination that it had no discretion to depart downward *de novo*.").

We follow a two-step inquiry. *See United States v. Moreno-Padilla*, 602 F.3d 802, 810 (7th Cir. 2010). First, we determine whether the district court committed any procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51; *see also Jackson*, 547 F.3d at 792. Second, if we determine

there was no procedural error, we then examine "the substantive reasonableness of the sentence" itself. *Gall*, 552 U.S. at 51; *see also United States v. Abbas*, 560 F.3d 660, 666-68 (7th Cir. 2009).

### B.  History of Fast-Track Programs

Although much ink has already been used by this and other courts in describing the genesis of fast-track programs, we feel it necessary to provide an abridged history of these programs because the disposition of our cases today turns on the gloss that recent case law has placed on this background.

Fast-track, or "early disposition" programs, were used in federal district courts as early as 1994. *See Galicia-Cardenas*, 443 F.3d at 555 (*citing* Alan D. Bersin, *Reinventing Immigration Law Enforcement in the Southern District of California*, 8 Fed. Sentencing Rep. 254 (1996)). The programs emerged in states bordering Mexico in an effort to curtail overwhelming immigration case loads. *See Martinez-Martinez*, 442 F.3d at 542 (*citing United States v. Morales-Chaires*, 430 F.3d 1124, 1127 (10th Cir. 2005)). At the time, United States Attorneys used "charge-bargaining" as a mechanism to speed the disposition of these cases. In essence, they offered to recommend more lenient sentences in exchange for pre-indictment guilty pleas and waivers of appellate rights. *Id.*; *see also United States v. Arrelucea-Zamudio*, 581 F.3d 142, 145 (3d Cir. 2009) (*citing* U.S. Sentencing Comm'n, *Report to Congress*: *Downward Departures from the Federal Sentencing*

*Guidelines*, at 65 (Oct. 2003), available at http://www. ussc.gov/departrpt03/departrpt03.pdf (hereinafter "Sentencing Commission Report")).

Almost ten years later, Congress formalized the practice by enacting the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650 (2003). The PROTECT Act was designed as part of an overarching initiative to respond to a purported increase in departures from the guidelines and provide meaningful appellate review of such cases. *Arrelucea-Zamudio*, 581 F.3d at 145 (noting that the Act was passed pre-*Booker*). In an amendment to a companion bill, the Child Abduction Prevention Act—which was passed before the PROTECT Act—the House of Representatives attached a report expressing its intent for legislating in this area. According to the commentary, Congress sanctioned "limited departures" under structured early disposition programs, although such programs were to be reserved only for offenses "whose high incidence within the district has imposed an *extraordinary* strain on the resources of that district as compared to other districts." H.R. Rep. No. 108-48, at 7 (2003) (emphasis added); *see also Martinez-Martinez*, 442 F.3d at 542. Congress also commented that the bill "does not confer authority to depart downward on an *ad hoc* basis in individual cases." H.R. Rep. No. 108-48, at 7.

Although the PROTECT Act did not specifically address the practice of charge-bargaining, *Martinez-Martinez*, 442 F.3d at 542, it nonetheless authorized

the Attorney General to establish official fast-track programs on a district-by-district basis, *United States v. Rodriguez*, 527 F.3d 221, 223 (1st Cir. 2008). It further directed the Sentencing Commission to "develop a guideline 'authorizing a downward departure of not more than 4 levels if the Government files a motion for such a departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney.'" *Martinez-Martinez*, 442 F.3d at 542 (*quoting* the PROTECT Act, § 401(m)(2)(B), 117 Stat. at 675).

As a result, the Sentencing Commission created U.S.S.G. § 5K3.1, which provides: "Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides." The Sentencing Commission also filed a report with Congress, which addressed the sentencing disparity paradigm created by § 5K3.1. Although this report is not binding here, it provides insight into the Sentencing Commission's perspective in enacting the guideline. In pertinent part, the report stated:

> The Department of Justice requested that the Commission implement the directive regarding the early disposition programs in section 401(m) of the PROTECT Act in a similar unfettered manner by merely restating the legislative language and "leav[ing] to the sentencing court the extent of the departure under these early disposition programs." The Commission notes that imple-

mentation of the directive in this manner *has the potential to create unwarranted sentencing disparity*.

. . .

Defendants sentenced in districts without authorized early disposition programs, however, can be expected to receive longer sentences than similarly-situated defendants in districts with such programs. This type of geographical disparity *appears to be at odds with the overall Sentencing Reform Act goal of reducing unwarranted sentencing disparity among similarly-situated offenders*.

Sentencing Commission Report, at 66-67 (emphasis added) (footnote omitted). The Second Circuit in *United States v. Mejia*, 461 F.3d 158, 163-64 (2d Cir. 2006), a pre-*Kimbrough* case, and the Fifth Circuit in *United States v. Gomez-Herrera*, 523 F.3d 554, 561-62 (5th Cir. 2008), made particular note that the Sentencing Commission appeared to reject the idea of non-fast-track districts compensating for the disparity with downward departures:

Furthermore, sentencing courts in districts without early disposition programs, particularly those in districts that adjoin districts with such programs, may feel pressured to employ other measures—downward departures in particular—to reach similar sentencing outcomes for similarly situated defendants. This potential response by sentencing courts could undermine the goal of the PROTECT Act to reduce the incidence of downward departures.

Sentencing Commission Report, at 67. *But see Rita v. United States*, 551 U.S. 338, 347-48 (2007) (listing the Sentencing Commission's policy statements as one of the many non-binding factors to be taken into account by the district court when sentencing). The Sentencing Commission added that because little guidance was provided to sentencing courts, implementation of the fast-track guideline might lead to *undesirable* sentencing disparity. Accordingly, the Commission left the door open to a later examination of the impact of the programs: "the Commission agrees with the Department of Justice's comment that '[i]t may be appropriate at some later date to review how these early disposition programs are actually being implemented and whether further guidance to the courts might be useful.'" Sentencing Commission Report, at 67.

Shortly after the Sentencing Commission released its report, then-Attorney General John Ashcroft distributed a memorandum setting forth the Department of Justice's policies and requirements for a district to obtain fast-track status:

> In order to obtain Attorney General authorization to implement a "fast track" program, the United States Attorney must submit a proposal that demonstrates that

> (A) (1) the district confronts an exceptionally large number of a specific class of offenses within the district, and failure to handle such cases on an expedited or "fast-track" basis would significantly strain prosecutorial and judicial resources available in the district; or

(2) the district confronts some other exceptional local circumstances with respect to a specific class that justifies expedited disposition of such cases;

(B) declination of such cases in favor of state prosecution is either unavailable or clearly unwarranted;

(C) the specific class of cases consists of ones that are highly repetitive and present substantially similar fact scenarios; and

(D) the cases do not involve an offense that has been designated by the Attorney General as a "crime of violence." See 28 C.F.R. § 28.2 (listing offenses designated by the Attorney General as "crimes of violence" for purposes of the DNA collection provisions of the USA PATRIOT Act).

*Memorandum from Attorney General John Ashcroft Setting Forth Justice Department's "Fast-Track" Policies* (Sept. 22, 2003), 16 Fed. Sent'g Rep. 134, 134-35 (Dec. 2003) (hereinafter "Attorney General Memorandum"). The defendant in return must agree to the factual basis regarding the offense and waive certain pre-trial motions, the right to appeal, and the right to petition for a writ of habeas corpus, "except on the issue of ineffective assistance of counsel." *Id*. at 135.

As noted by the district court in Sanchez-Gonzalez's case, the development of fast-track programs has been prolific. *See United States v. Sanchez-Gonzalez*, No. 08 CR 609, 2009 WL 310901, at *3 (N.D. Ill. February 9, 2009) (referencing *United States v. Medrano-Duran*, 386 F. Supp. 2d

943, 948 (N.D. Ill. 2005), which provided that early disposition programs were authorized in districts such as Oregon, Idaho, Nebraska, North Dakota, and the Western District of Washington); *see also* Thomas E. Gorman, Comment, *Fast-Track Sentencing Disparity: Rereading Congressional Intent to Resolve the Circuit Split*, 77 U. Chi. L. Rev. 479, 490-93 (2010). "As of February 2008, the Attorney General has authorized fast-track programs in 20 districts, though only 16 of those have illegal reentry programs . . . ." *Arrelucea-Zamudio*, 581 F.3d at 146. None of the districts in the Seventh Circuit are fast-track districts.

### C. *Procedural Error*

The appellants argue that both district courts committed reversible procedural error because the courts found that Seventh Circuit precedent precluded them from considering the sentences given in fast-track districts as part of their 18 U.S.C. § 3553(a) analyses, despite recent Supreme Court decisions.

There is a long-standing principle that we may not overturn circuit precedent without compelling reasons. *Santos v. United States*, 461 F.3d 886, 891 (7th Cir. 2006); *McClain v. Retail Food Employers Joint Pension Plan*, 413 F.3d 582, 586 (7th Cir. 2005); *United States v. Walton*, 255 F.3d 437, 443 (7th Cir. 2001); *Mid-Am. Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1364 (7th Cir. 1996).

> The doctrine of stare decisis "imparts authority to a decision, depending on the court that rendered it, merely by virtue of the authority of the ren-

dering court and independently of the quality of its reasoning. The essence of stare decisis is that the mere existence of certain decisions becomes a reason for adhering to their holdings in subsequent cases."

*Tate v. Showboat Marina Casino P'ship*, 431 F.3d 580, 583 (7th Cir. 2005) (*quoting Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 457 (7th Cir. 2005)). Therefore,

> we give considerable weight to prior decisions of this court unless and until they have been overruled or undermined by the decisions of a higher court, or other supervening developments, such as a statutory overruling. However, we are cognizant of the fact that we are not absolutely bound by them, and must give fair consideration to any *substantial* argument that a litigant makes for overruling a previous decision.

*Haas v. Abrahamson*, 910 F.2d 384, 393 (7th Cir. 1990) (internal quotation marks and citation omitted). Thus, although "it is rarely appropriate to overrule circuit precedent just to move from one side of a conflict to another," *United States v. Corner*, 598 F.3d 411, 414 (7th Cir. 2010) (en banc), "[p]recedents are not sacrosanct; we have overruled many." *Buchmeier v. United States*, 581 F.3d 561, 565 (7th Cir. 2009) (en banc).

Our court has recently recognized that the Supreme Court has "rekindled debate about whether the absence of a fast-track program can be a factor in the choice of sentence*." United States v. Valadez-Martinez*, 295 F. App'x 832, 835 (7th Cir. 2008) (declining to address the issue

because the sentencing court in fact considered and rejected defendant's fast-track disparity argument); *see also United States v. Ortega-Vargas*, 337 F. App'x 571, 574 (7th Cir. 2009) (refusing to consider the effect of *Kimbrough* on circuit precedent because the district court neither addressed defendant's fast-track argument nor stated that it was precluded from considering it). And district courts in our circuit have repeatedly implored us to address this issue. *See, e.g., United States v. Gramillo-Garcia*, 632 F. Supp. 2d 837, 841 (N.D. Ill. 2009) (declining to wait for us to issue our opinion in *Sanchez-Gonzalez* because doing so might cause the defendant to serve more time "than what would otherwise be [the district court's] prescribed custodial sentence"); *Medrano-Duran*, 386 F. Supp. 2d at 948 (imposing a sentence below the advisory guideline range based on the disparity created by fast-track districts); *Sanchez-Gonzalez*, 2009 WL 310901, at *3 (finding the court was precluded from considering the fast-track argument, but that it was unjust as a matter of policy).

There are considerable differences of opinion on this issue among the circuit courts. The Fifth Circuit held that *Kimbrough* did not overturn several other circuits' decisions that a sentencing court was precluded from considering disparities created by fast-track programs. *United States v. Gomez-Herrera*, 523 F.3d 554, 562-63 (5th Cir. 2008). Because Congress authorized fast-track programs without amending § 3553(a)(6), it implicitly intended sentencing disparity among similarly situated defendants to occur, and therefore such disparity was not unwarranted. *Id*. The court stated that "*Rita* or *Kimbrough* addressed only a district court's discretion

to vary from the Guidelines based on a disagreement with *Guideline*, not Congressional, policy." *Id*. at 563.

The Eleventh Circuit fell in line with the Fifth Circuit, stating:

> [T]he most that could possibly be argued is that *Kimbrough* overruled . . . prior precedents holding that a district court cannot vary from the advisory Guidelines based on a disagreement with a Guideline, even where the Sentencing Commission policy judgment, not Congressional direction, underlies the Guideline at issue, and even where that policy judgment did not arise from the Commission's exercise of its characteristic institutional role.

*United States v. Vega-Castillo*, 540 F.3d 1235, 1239 (11th Cir. 2008). Significantly, though, even if the Eleventh Circuit found that *Kimbrough* was at odds with its prior holdings, its prior precedent rule restricted the panel from overturning its prior cases. *Id*. at 1236-37 n.3 (stating that "prior precedent must be followed unless the prior precedent has been overruled by this court *en banc* or by the United States Supreme Court"). In a vigorous dissent, Judge Barkett observed that *Kimbrough* "flatly rejected" the panel's position, and argued that "sentencing courts should not infer from the PROTECT Act that they can never deviate from the Guidelines based on 'fast-track' disparities," *id*. at 1241 n.4, because *Kimbrough* held that it is improper to read any " 'implicit directive . . . into congressional silence,' " *id*. (*quoting Kimbrough*, 552 U.S. at 87). The dissent further disagreed

that the court was limited by its prior precedent rule because the panel was authorized to give "full effect" to intervening Supreme Court decisions when necessary. *Id*. at 1242.

The Ninth Circuit also concluded that *Kimbrough* had no effect on fast-track sentencing arguments. *United States v. Gonzalez-Zotelo*, 556 F.3d 736, 739-41 (9th Cir. 2009). The court reiterated that sentencing disparities resulting from fast-track programs were not "unwarranted," citing our holding in *Galicia-Cardenas* among others, *id*. at 739, and that district courts may not disregard congressional policy, *id*. at 741.

The First, Third, and Sixth Circuits, however, have reached a different conclusion. The First Circuit held that following *Kimbrough*, "consideration of fast-track disparity is not categorically barred as a sentence-evaluating datum within the overall ambit of 18 U.S.C. § 3553(a)." *United States v. Rodriguez*, 527 F.3d 221, 229 (1st Cir. 2008). The court noted that the conclusion in *Gomez-Herrera* could only be reached through "heavy reliance on inference and implication about congressional intent," and that "*Kimbrough* made pellucid that when Congress exercises its power to bar district courts from using a particular sentencing rationale, it does so by the use of unequivocal terminology." *Id*. at 229-30.

The Third Circuit also found the analyses by the Fifth, Ninth, and Eleventh Circuits to be erroneous. The court said that "[f]ocusing on congressional policy here is illusory." *United States v. Arrelucea-Zamudio*, 581 F.3d 142, 150-51 (3d Cir. 2009) (stating that "the PROTECT

Act contains no express congressional fast-track directive that would constrain a sentencing judge's discretion to vary from the Guidelines," and if Congress wanted to limit this discretion, "it has the power to amend the pertinent statute . . . [but] has not done so here"). In fact, the government declined to even argue that congressional policy limited a sentencing court's discretion to consider fast-track-caused disparities. *Id*. at 150 n.8. Moreover, the court specifically rejected the Eleventh Circuit's view of *Kimbrough*, stating that it was premised on the "superficial . . . factual distinction" between crack and powder cocaine sentencing disparities and fast-track sentencing disparities. *Id*. The court held that sentencing courts are permitted to consider a fast-track argument under § 3553(a). *Id*. at 157.

Finally, the Sixth Circuit recently joined with the First and Third Circuit. The Sixth Circuit based its decision on *Kimbrough* and held that a fast-track disparity can be the basis of a below-guidelines sentence. *See United States v. Camacho-Arellano*, 614 F.3d 244 (6th Cir. 2010). Importantly, the court noted that the holding in *Kimbrough* and in *Spears v. United States,* 129 S. Ct. 840 (2009)—that sentencing judges may vary from the guidelines based on policy disagreements—"is not limited to the crack/powder cocaine context." *Id*. at *16.

This ongoing debate and current circuit split are compelling reasons to revisit our precedent. We now turn first to the recent case law in this area.

*1. Recent Case Law*

In the watershed case of *United States v. Booker*, 543 U.S. 220, 246 (2005), the Supreme Court held that the sentencing guidelines are advisory only. In *Gall v. United States*, the Court reaffirmed that the guidelines are advisory only, 552 U.S. 38, 46 (2007), and further provided that in considering the § 3553(a) factors the sentencing judge "may not presume that the Guidelines range is reasonable." *Id*. at 50. Likewise, appellate courts are not permitted to apply a presumption of unreasonableness to sentences falling outside of the recommended guidelines range. *Id*. at 47 (*citing Rita,* 551 U.S. at 354-55). The Court explained that "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case," *id*. at 52 (internal quotation marks omitted), because "[t]he sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court,'" *id*. at 51-52 (*quoting Rita*, 551 U.S. at 357-58); *Rodriguez*, 527 F.3d at 225 (noting that in *Gall*, the Court emphasized that "district courts have wide latitude in making individualized sentencing determinations").

Further elucidating this new understanding of the guidelines, the Supreme Court decided *Kimbrough* on the very same day that it decided *Gall*. There, the Court made abundantly clear that the guidelines are advisory only and that district court judges are authorized to disagree with the Sentencing Commission, even in a "mine-run case." *Kimbrough*, 552 U.S. at 109. Significantly,

the Court rejected the government's position that the guideline adopting the 100-to-1 ratio for crack and powder cocaine was binding on district courts because it was effectively sanctioned by Congress. *Id*.; *see also Arrelucea-Zamudio*, 581 F.3d at 148. As such, the Court "decline[d] to read any implicit directive into . . . congressional silence*." Kimbrough*, 552 U.S. at 87.

More recently the Court expounded on the application of *Booker, Gall,* and *Kimbrough* in *Spears v. United States*, in which it held that a district court had authority to replace the guidelines' 100:1 ratio for crack and powder cocaine offenses with its own 20:1 ratio. 129 S. Ct. at 843-44. The Court said that "the correct interpretation" of *Kimbrough* is that the district court may vary from the guidelines "based solely on its view that the 100-to-1 ratio embodied in the sentencing guidelines for the treatment of crack cocaine versus powder cocaine creates 'an unwarranted disparity within the meaning of § 3553(a),' and is 'at odds with § 3553(a).'" *Id*. at 842 (*quoting United States v. Spears*, 533 F.3d 715, 719 (8th Cir. 2008) (en banc) (Colloton, J., dissenting)). Therefore, the sentencing courts are "entitled to reject and vary *categorically* from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." *Id*. at 843-44 (emphasis added). We subsequently considered the impact of these cases en banc, reaching the conclusion that "*Kimbrough* and *Spears* . . . mean that district judges are at liberty to reject *any* Guideline on policy grounds—though they must act reasonably when using that power." *Corner*, 598 F.3d at 415.

Finally, in *Vazquez v. United States*, 130 S. Ct. 1135 (2010), the Court vacated an Eleventh Circuit opinion that held that sentencing courts could not disagree with congressionally dictated policy expressed in the career offender guidelines. *See United States v. Vazquez*, 558 F.3d 1224, 1227-28 (11th Cir. 2009). Rather, the Court was receptive to the Solicitor General's position that:

> *Kimbrough*'s reference to Section 994(h) as an example of Congress directing "the Sentencing Commission" to adopt a Guideline reflecting a particular policy, 552 U.S. at 103, did not suggest that Congress had bound sentencing courts through Section 994. The court of appeals' reliance on *Kimbrough*'s reference to Section 994(h) therefore depends on the additional, unstated, premise that congressional directives to the Sentencing Commission are equally binding on sentencing courts. That premise is incorrect.

*See* Brief for the United States at 9, *Vazquez v. United States*, 130 S. Ct. 1135 (2010) (No. 09-5370).

In combination, these cases have cast doubt on the notion that district courts are bound to follow directives issued to the Sentencing Commission by Congress. In light of *Booker*, *Gall*, *Kimbrough*, *Spears*, and *Vazquez*, we recently granted a petition for rehearing en banc in *United States v. Corner*, 598 F.3d 411 (7th Cir. 2010), to reconsider our holding in *United States v. Welton*, 583 F.3d 494 (7th Cir. 2009), the primary authority on which the government in the cases at hand appears to rely.

Basing our reasoning on the Eleventh Circuit's decision in *Vazquez*, in *Welton* we held that a sentencing court lacks authority to vary from the career offender guidelines based on the "career offender crack/powder disparity" because the "disparity is the result of a legislative act*." Id*. at 499. We reached this conclusion by interpreting *Kimbrough* to mean that § 994(h) "reflects a Congressional policy with which a sentencing court may not disagree" and is one "instance where Congress has expressly incorporated a sentencing policy into the Guidelines." 583 F.3d at 498-99.

We overruled *Welton* in *Corner*. Not only does *Corner* overturn *Welton,* but also to a large extent it eviscerates the government's position in this case. According to *Corner, Welton* mistakenly interpreted the Supreme Court's reference to § 994(h) in *Kimbrough* "to imply that U.S.S.G. § 4B1.1, which implements § 994(h), should be treated as a statute for the purpose of *Booker* and *Kimbrough*." 598 F.3d at 415. Importantly, *Corner* explained that a congressional directive to the Sentencing Commission to implement a particular guideline does not satisfy *Kimbrough*'s requirement that Congress must "direct sentencing practices in express terms" in order to limit judicial discretion. *Id*. (*quoting Kimbrough*, 552 U.S. at 103). We did, however, qualify our holding in *Corner* by noting that district court judges "must implement all statutes, whether or not the judges agree with them"; but we added that "*Booker*, *Kimbrough*, and *Spears* hold that the floors (and ceilings) in Guidelines are not legally binding." *Id*. at 415-16.

Because the parallels between the analyses and holdings of these cases are unquestionably similar to the issues presented in the fast-track context, we now revisit our prior precedent in that area.

### 2. *Guideline § 5K3.1*

The government argues that because our prior precedent holds that Congress "expressly approved" fast-track sentencing, § 5K3.1 must be treated as a statute, thus preventing district court judges in non-fast-track districts from disagreeing with that guideline. We do not believe that our precedent so neatly resolves the question. In any event, the government's reading of our precedent is an overdrawn extension of the PROTECT Act.

Our pre-*Kimbrough* discussion begins with *Martinez-Martinez*, 442 F.3d 539. In *Martinez-Martinez*, after summarizing the history of the PROTECT Act and guideline § 5K3.1, we commented that "[g]iven Congress'[s] explicit recognition that fast-track procedures would cause discrepancies, we cannot say that a sentence is unreasonable simply because it was imposed in a district that does not employ an early disposition program." *Id*. at 542. We therefore concluded that the sentencing disparity created by fast-track programs can be "considered appropriately as a single, and not controlling, factor." *Id*. at 543. Without the benefit of the two-prong analytical framework currently used by courts of appeals, *Gall*, 552 U.S. at 51, our holding that Martinez-Martinez's sentence should be affirmed was based on

the substantive reasonableness of the sentence provided; it did not address procedural error.

The following day, we held in a brief per curiam opinion based completely on *Martinez-Martinez* that a sentence imposed after a downward departure based solely on the disparity created by early disposition programs in other districts could not be deemed reasonable. *Galicia-Cardenas*, 443 F.3d at 555. We observed that because Congress "directed" the Sentencing Commission to develop a policy statement implementing the PROTECT Act, Congress explicitly recognized "that fast track procedures would cause discrepancies." *Id.* Accordingly, we concluded the district courts must look to "other factors" to determine if defendants are deserving of sentences below the advisory guidelines range. *Id.*

In another pre-*Kimbrough* case, *United States v. Rodriguez-Rodriguez*, 453 F.3d 458, 462 (7th Cir. 2006), we relied upon *Martinez-Martinez*'s holding "that a sentence in a district without a fast-track program *need* not be reduced," and *Galicia-Cardenas*'s clarification "that it *must* not be reduced." And we again confirmed our pre-*Kimbrough* reasoning in *United States v. Roche-Martinez*, 467 F.3d 591, 595-96 (7th Cir. 2006) and *United States v. Lopez-Estrada*, 201 F. App'x 371, 373-74 (7th Cir. 2006) (unpublished). We pause to note, however, that while these cases recognized that *Galicia-Cardenas* prohibits consideration of the fast-track disparity, none of their outcomes appear tethered to *Galicia-Cardenas*'s extreme interpretation of § 5K3.1.

Here, the government argues that despite the wave of change in recent case law, we have stayed the course

post-*Kimbrough* on the theory that the fast-track guide-line was a primary act of Congress, thereby shielding sentences from these type of challenges. The primary support for the government's argument is our decision in *United States v. Pacheco-Diaz*, 506 F.3d 545 (7th Cir. 2007), where we followed *Martinez-Martinez*, *Galicia-Cardenas*, and *Roche-Martinez*.

The government assumes too much, however, because although *Pacheco-Diaz* did post-date *Kimbrough*, that decision rested entirely on our pre-*Kimbrough* cases; in fact, we did not address *Kimbrough* or *Gall*. Instead, our limited treatment of the argument in *Pacheco-Diaz* simply noted that we had "repeatedly rejected arguments that a sentence is unreasonable solely because it was imposed in a jurisdiction that does not make use of fast-track programs." *Id*. at 552.

As in *Corner*, we are compelled now to reconsider our prior interpretation of the fast-track guideline § 5K3.1. We now hold, consistent with the First, Third, and Sixth Circuits, that a district court may consider a fast-track argument when evaluating the applicable § 3553(a) factors. Although we previously held that Congress "expressly approved" fast-track sentencing disparities through the PROTECT Act—thus effectively constraining sentencing judges' discretion to consider the absence of a fast-track program in their districts under § 5K3.1—the Supreme Court's disposition in *Vasquez* reflects the understanding that Congressional "directives" to the Sentencing Commission are unlike statutes in that they are not equally binding on sentencing courts.

This follows the new paradigm established by *Kimbrough* and *Spears* that permits district court judges to disagree categorically with those directives in providing an individual sentence. To the extent that our prior decisions might be read to treat § 5K3.1 as if it had the effect or force of a statute, we were proceeding without the benefit of *Kimbrough*, *Gall*, *Spears*, *Vasquez*, and *Corner*. These new developments in the law now refocus our understanding of § 5K3.1 and cause us to view it through a different lens.

Our reading of the previously discussed policy statements published by the Sentencing Commission compels us to conclude that the Commission clearly acted outside its characteristic institutional role in creating § 5K3.1. *Kimbrough* instructs sentencing courts to give *less* deference to guidelines that are not the product of the Commission acting in "its characteristic institutional role," in which it typically implements guidelines only after taking into account "empirical data and national experience." 552 U.S. at 109; *Rodriguez*, 527 F.3d at 227.

In fact, it is arguable whether there is even a Congressional directive "embedded" in the fast-track guideline. We simply know that Congress authorized the Sentencing Commission to develop a guideline providing "a downward departure of not more than 4 levels if the Government files a motion for such a departure pursuant to an early disposition program." PROTECT Act, § 401(m)(2)(B), 117 Stat. at 675. Further, the congressional report issued in connection with the Child Abduction Prevention Act, which was passed prior to

the PROTECT Act, speaks only in general terms of Congress's reasons for legislating in the area. Without more, we hesitate to construe the meaning of such a report in terms of defining § 5K3.1 as a statute.

Importantly, in the text of the PROTECT Act, Congress did not specifically address a district court's discretion with respect to sentencing in non-fast-track districts. While Congress "explicitly" gave the Attorney General the ability to establish early disposition programs district by district, and instructed the Sentencing Commission to promulgate a guideline to implement those programs, it certainly did not explicitly forbid non-fast-track districts from taking into account the effect of fast-track dispositions under the § 3553(a) factors.

If Congress wanted to prohibit judges in non-fast-track districts from disagreeing with § 5K3.1 based on policy, Congress could have issued such a directive in unequivocal terminology. *See Corner*, 598 F.3d at 416 ("Congress has shown that it knows how to direct sentencing practices in express terms. For example, Congress has specifically required the Sentencing Commission to set Guidelines sentences for serious recidivist offenders 'at or near' the statutory maximum. 28 U.S.C. § 994 (h).") (*quoting Kimbrough*, 552 U.S. at 103); *see also Arrelucea-Zamudio*, 581 F.3d at 151 ("If Congress does not want district courts to exercise their judicial function to sentence defendants based on the facts and circumstances of each case under the guidance of the § 3553(a) factors, then it has the power to amend the pertinent statute. It has not done so here."). It did not issue such a directive.

Congress certainly did not instruct the Commission to link § 5K3.1 to statutory maximums or minimums, *cf. Corner*, 598 F.3d at 416, nor does § 5K3.1 explicitly address appropriate sentences in non-fast-track districts. We are instructed that we must "decline[] to read any implicit directive into the congressional silence," *Kimbrough*, 552 U.S. at 87. Because there is no express restriction of judicial consideration of fast-track disparity in the plain language of the PROTECT Act, we refuse to read any such restriction into § 5K3.1. *See Camacho-Arellano*, 614 F.3d at 249 ("In effect, while Congress intended to create room for courts in fast-track jurisdictions to treat defendants in a certain manner, it did nothing to prohibit judges in non-fast-track districts from treating defendants the same way."); *Arrelucea-Zamudio*, 581 F.3d at 151 ("The PROTECT Act contains no express congressional fast-track directive that would constrain a sentencing judge's discretion to vary from the Guidelines."); *Rodriguez*, 527 F.3d at 227 ("The Act, by its terms, neither forbids nor discourages the use of a particular sentencing rationale, and it says nothing about a district court's discretion to deviate from the guidelines based on fast-track disparity.").

This decision, therefore, overturns *Galicia-Cardenas*, but only to the extent that this case held that § 5K3.1 differs from other guidelines, such that a district court *must* not reduce a defendant's sentence based on fast-track dispar-

ity.[1] Because the disposition of our other fast-track cases did not hinge on *Galicia-Cardenas*, we need not revisit them.

We pause to recognize an issue raised in prior cases—what § 3553(a) factor should be used by district courts to account for fast-track disparities? In most cases, the primary argument of appellants was that their sentences were unreasonable because the district courts created an "unwarranted" sentencing disparity in contravention of § 3553(a)(6), which provides that the district court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See Pacheco-Diaz*, 506 F.3d at 552 ("[T]he district court failed to consider the unwarranted sentencing disparity that resulted from his lack of access to a fast-track program."); *Roche-Martinez*, 467 F.3d at 595 (noting that appellant argued "the absence of a fast-track program in the Northern District of Illinois has resulted in an unfair sentencing disparity"); *Galicia-Cardenas*, 443 F.3d at 555; *Martinez-Martinez*, 442 F.3d at 541. The appellants in this case do not cabin their arguments so narrowly. Instead, they argue that the district courts should be able to consider fast-track disparities *as part of* their § 3553(a) analyses, not as the *sole* reason to depart from the guidelines range.

The Third Circuit addressed this same issue in *Arrelucea-Zamudio*:

---

[1] This opinion has been circulated to all active judges under Circuit Rule 40(e). No judge favored hearing this case en banc.

The fast-track issue should not be confined to subsection (a)(6), which concerns "avoid[ing] unwarranted sentencing disparities." Instead, we hold that a sentencing judge has the discretion to consider a variance under the *totality* of the § 3553(a) factors (rather than one factor in isolation) on the basis of a defendant's fast-track argument, and that such a variance would be reasonable in an appropriate case.

We analogize this issue to the crack cocaine question dealt with in *Kimbrough*. In the cocaine Guidelines context, the Supreme Court stated that a sentencing "judge must include the Guidelines range in the array of factors warranting consideration. The judge may determine, however, that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." *Kimbrough*, 552 U.S. at 91 (*quoting* 18 U.S.C. § 3553(a)). The Court held that, "[i]n making that determination, the judge may consider the disparity between the Guidelines treatment of crack and powder cocaine offenses," *id.*, and, "[t]o reach an appropriate sentence . . . disparities must be weighed against the other § 3553(a) factors." *Id*. at 108. By logical extension we believe a judge may also *consider* the disparate treatment of immigration defendants that is created by fast-track programs in determining whether a Guidelines sentence is greater than necessary under the § 3553(a) factors.

581 F.3d at 149 (emphasis added). We agree with the Third Circuit that consideration of the fast-track argument as part of the sentencing judge's § 3553(a) evaluation does not constitute procedural error. Because a defendant must first have been eligible for fast-track status had it been available and show that he would have in fact pursued the option (by pleading guilty and waiving his appellate rights), and because "no judge is *required* to sentence at a variance with a Guideline" even if "at liberty to do so," *Corner*, 598 F.3d at 416; *see also United States v. Filipiak*, 466 F.3d 582, 583 (7th Cir. 2006), the impact of our decision here is underwhelming.

In fact, it is important to note that a district court could reach the decision of whether to depart from the guideline through the normal course of its § 3553(a) analysis without restating a fast-track "unwarranted" disparity analysis. *See United States v. Bartlett*, 567 F.3d 901, 908-09 (7th Cir. 2009). "Section 3553(a)(6) directs district courts to consider the need to avoid unwarranted disparities—along with *other* § 3553(a) factors—when imposing sentences." *Kimbrough*, 552 U.S. at 108 (emphasis added) (citation omitted). A district court should consider all relevant § 3553(a) factors collectively, not just what is in § 3553(a)(6). *Bartlett*, 567 F.3d at 908-09; *Rodriguez*, 527 F.3d at 228 (explaining that "a sentencing judge should engage in a more holistic inquiry" than whether fast-track disparity is "unwarranted" under § 3553(a)(6)). For example, a district court may alternatively look to the "parsimony provision" of § 3553(a), which provides that a district court must impose sentences that are "sufficient, but not greater than necessary" to comply with the sentencing goals of

the statute. *Kimbrough*, 552 U.S. at 101, 111; *Rodriguez*, 527 F.3d at 228. Additionally, "district courts must take account of sentencing practices in other courts" as part of their § 3553(a) analysis. *Kimbrough,* 552 U.S. at 108.

Following this logic, we previously stated that "§ 3553 permits a judge to reduce one defendant's sentence because of another's lenient sentence—not *because of* § 3553(a)(6), but *despite* it." *Bartlett*, 567 F.3d at 908. We further explained that the district court may afford other factors greater weight than the need to avoid "unwarranted" disparities, "and the court is free to have its own policy about which differences are 'unwarranted.'" *Id.* at 908-09. It is, therefore, reasonable that a sentencing court could consider sentencing practices in other jurisdictions in determining whether a particular defendant's guideline sentence was "greater than necessary."

It has been observed by even strong defenders of the guidelines that the sentencing ranges called for under the guidelines for unlawful reentry cases are often unreasonably harsh and disproportionate to the seriousness of the offense. *See, e.g.*, Paul G. Cassell, *Too Severe*?: *A Defense of the Federal Sentencing Guidelines* (*and a Critique of the Federal Mandatory Minimums*), 56 Stan. L. Rev. 1017, 1019 (2004) (expressing view that immigration sentences are too severe). And, as previously discussed, it is clear under *Kimbrough* and *Spears* that district courts have sufficient flexibility to vary from the harsh sentences called for by the guidelines in appropriate cases without the need to determine whether any disparity created by the existence of fast-track programs is "unwar-

ranted." Although district courts may arrive at the same outcome whether they choose to consider the fast-track argument or not, we clarify today that the absence of a fast-track program and the resulting difference in the guidelines range should not be *categorically excluded* as a sentencing consideration. *See Rodriguez*, 527 F.3d at 229.

We note, however, that we find it unnecessary to base our conclusion on the argument that the practice of informal charge-bargaining programs provides an alternative justification for imposing a below-guidelines sentence. *See Camacho-Arellano*, 614 F.3d at 250. The theory is that these programs were never formally authorized by Congress, and therefore the increased disparity they create must be "unwarranted." Because we find that § 5K3.1 should be treated as a guideline and not as a statute, we need not discuss this theory further.

Our holding merely permits the sentencing judge to *consider* a facially obvious disparity created by fast-track programs among the totality of § 3553(a) factors considered. However, we provide a word of caution that a departure from the guidelines premised solely on a fast-track disparity may still be unreasonable. To withstand scrutiny, a departure should result from a holistic and meaningful review of all relevant § 3553(a) factors.

### 3. Separation of Powers

The government argues that providing district court judges in non-fast-track districts the discretion to con-

sider fast-track disparity as part of their § 3553(a) evalua-
tion infringes on the executive branch's power. The
government argues that because the PROTECT Act autho-
rized the Attorney General to set up fast-track programs
on a district-by-district basis, sentencing disparities
arising from the programs are simply the by-product of
a proper exercise of prosecutorial discretion. The gov-
ernment supports its argument by noting that within fast-
track districts the government must decide whether to
offer a defendant the opportunity to opt into the program,
and then the government must make a motion to the
sentencing judge requesting the departure.

While we are acutely aware and respectful of our sister
branches of government, we find no separation of
powers violation here. As we have been careful to articu-
late, our holding does not create a de facto fast-track
program in our circuit's non-fast-track districts, nor did
the appellants make such a request. The First Circuit
also addressed this particular argument:

> While the decision to institute a fast-track pro-
> gram in a particular judicial district is the Attorney
> General's, the ultimate authority to grant a fast-
> track departure lies with the sentencing court. . . .
> [T]he appellant asks that we gauge the impact
> of disparate sentencing in crafting his sentence.
> Because this is an unquestionably judicial func-
> tion, we discern no separation of powers concerns
> here.

*Rodriguez*, 527 F.3d at 230 (citation omitted).

This reasoning also holds true with respect to the gov-
ernment's argument that it is the prosecutor's decision

whether to make a motion to the sentencing judge. As we noted in *Corner*, "[a] motion to a court's discretion is a motion, not to its inclination, but to its judgment." 598 F.3d at 415 (internal quotation marks omitted). Therefore, regardless of whether a defendant is within a sanctioned fast-track district, the sentencing judge must *independently* determine whether to accept a motion for a downward departure, no matter which party submits it. These programs merely highlight the appropriate balance between prosecutorial and judicial discretion; they do not define bright lines of separation.

Finally, we note that nothing about our holding precludes the sentencing judge from accounting for the Sentencing Commission's policy statement that warns against undermining the effectiveness of fast-track programs. Sentencing Commission Report, at 67. In addition, "a district court is not afforded unfettered discretion in sentencing defendants. It is constrained by [the appellate court's] procedural and substantive reasonableness review." *Arrelucea-Zamudio*, 581 F.3d at 156. We therefore find the government's separation of powers argument unpersuasive.

### III. CONCLUSION

We hold that § 5K3.1 should be treated as any other guideline, thereby affording district court judges the ability to consider the absence of a fast-track program in crafting an individual sentence. Because the judges in the district courts were precluded by our prior precedent from considering the defendants' fast-track argu-

ments, we do not determine today whether the appellants would have in fact been eligible for such consideration, nor do we opine on the reasonableness of their sentences. The sentences of Reyes-Hernandez's and Sanchez-Gonzalez's are VACATED, and their cases are REMANDED for re-sentencing consistent with this opinion.