In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3042

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUAN P. LUA-GUIZAR,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 CR 71—**George W. Lindberg**, *Judge.*

ARGUED MAY 31, 2011—DECIDED AUGUST 26, 2011

Before EASTERBROOK, *Chief Judge*, and WOOD and
TINDER, *Circuit Judges.*

WOOD, *Circuit Judge.* After Juan Lua-Guizar pleaded
guilty to reentering the United States unlawfully
following his removal, he asked the district judge to
impose a sentence well below the range advised by
the sentencing guidelines. Lua-Guizar gave two argu-
ments in favor of this downward adjustment: (1) that
his "cultural assimilation," as contemplated in a then-

pending amendment to the guidelines, made him eligible for a lower sentence; and (2) that a lighter sentence was necessary to avoid an "unwarranted sentencing disparity" based upon the fact that he was convicted in a district without a "fast-track" program that would have given him the opportunity to receive a lighter sentence in exchange for waiving certain rights. The district court was not persuaded by these points and imposed a sentence at the bottom of the guidelines range. On appeal, Lua-Guizar argues that the district court committed procedural error in so ruling. We find nothing amiss, however, and so we affirm.

# I

Lua-Guizar first entered the United States from Mexico as a three-year-old; he grew up in Los Angeles, California. As a teenager, Lua-Guizar met his now-former wife, Irma Gonzalez, with whom he has three daughters. In January 2001, some time after his divorce, Lua-Guizar was arrested for the importation and sale of a significant amount of cocaine. Still in 2001 and while out on bail, Lua-Guizar was twice arrested near Los Angeles for driving on a suspended or revoked license. He was placed on probation for each driving offense. After being pulled over for failing to signal in January 2002, Lua-Guizar consented to a search of his car; in the course of that search, more cocaine turned up. Lua-Guizar pleaded guilty to possessing a small "personal use" quantity of cocaine and received probation after 10 days of imprisonment. In August 2002, Lua-Guizar was con-

victed of the 2001 importation and sale charge, for which he was sentenced to three years of imprisonment.

Before Lua-Guizar could complete his sentence, he was removed to Mexico in May 2004. Less than a month later, Lua-Guizar returned to Los Angeles without authorization, primarily to take care of his daughters (who were eight, nine, and 10 years old at the time), one of whom has cerebral palsy. Following yet another traffic stop, Lua-Guizar was deported in 2007; again he returned unlawfully in 2008. This time, Lua-Guizar moved to Chicago, where he was eventually arrested for possession of cocaine in December of 2009. Though that charge was later dismissed, Lua-Guizar admits that he used cocaine that day. The arrest also alerted the authorities to Lua-Guizar's unlawful presence in the United States and led to an indictment for illegal reentry in violation of 8 U.S.C. § 1326(a).

Lua-Guizar pleaded guilty to the charge alleged in the indictment, with a plea agreement under which he preserved his right to challenge his conviction and sentence on appeal. His presentence investigation report put his offense level at 21 and his criminal history at category III. This yielded an advisory guidelines range of 46 to 57 months. In response, Lua-Guizar offered two reasons why the judge should impose a lighter sentence of 24 months.

First, Lua-Guizar pointed to the then-pending guideline amendment authorizing district courts to consider a downward adjustment of offense level based on a defendant's "cultural assimilation." U.S.S.G. § 2L1.2 cmt. n.8

(2010); see Amendment 740, effective Nov. 1, 2010. Such a move is appropriate where (1) the defendant has formed cultural ties in the United States by living here since childhood, (2) those cultural ties motivated the illegal reentry, and (3) the downward adjustment will not increase the risk to the public from further crimes by the defendant. U.S.S.G. § 2L1.2 cmt. n.8. Lua-Guizar noted that he has been in the United States since he was a toddler and that he returned to the United States after his removals to care for his young daughters. The risk of his illegally reentering again, Lua-Guizar urged, was significantly lower now that his daughters were older (the girls were 14, 15, and 16 at the time of sentencing). Lua-Guizar also provided an affidavit from his sister, who said that she had both a job and a place to stay in Mexico for her brother. Nonetheless, the district court declined to adjust his sentence downward on this basis because Amendment 740 was still pending and because the court considered Lua-Guizar to be a risk to the public in light of his criminal past.

Second, Lua-Guizar argued that he deserved a below-guidelines sentence in order to remedy an alleged "unwarranted disparity," see 18 U.S.C. § 3553(a)(6), between himself and other defendants convicted of unlawful reentry but prosecuted in federal districts—like the Southern District of California, where Lua-Guizar grew up—that use "fast track" programs. Under such a program, a defendant's offense level may move down as much as four levels if he agrees to waive, among other things, his right to challenge his conviction either on appeal or in collateral proceedings. See U.S.S.G. § 5K3.1

(2009); *United States v. Reyes-Hernandez*, 624 F.3d 405, 409-11 (7th Cir. 2010).

At the time of Lua-Guizar's sentencing, the law of this circuit prohibited judges from considering the disparity caused by the absence of a fast-track program. See *United States v. Galicia-Cardenas*, 443 F.3d 553, 555 (7th Cir. 2006) *(per curiam)*. Lua-Guizar nevertheless properly preserved this point with an argument that the holding of *Kimbrough v. United States*, 552 U.S. 85 (2007), applied equally to this circumstance. The district court declined to take this factor into account for three reasons: first, it thought that any disparity was not "unwarranted," because Congress anticipated differences among districts; second, it noted that the government had not demonstrated its willingness to move for a departure as required by section 5K3.1; and finally, even assuming discretion under the guidelines, it found that the guidelines range was "perfectly suitable to Mr. Lua-Guizar's offenses and his criminal history." The district court then sentenced Lua-Guizar to 46 months—the bottom of the guidelines range. This appeal followed.

## II

Lua-Guizar continues to pursue his cultural assimilation and fast-track arguments on appeal. In each instance, he asserts that the district court committed procedural error—a matter that we review *de novo*. *United States v. Olmeda-Garcia*, 613 F.3d 721, 723 (7th Cir. 2010). A sentencing judge must first calculate the applicable guidelines range, then apply the § 3553(a) factors,

and finally arrive at a reasonable sentence. See *Gall v. United States*, 552 U.S. 38, 50-51 (2007); *United States v. Figueroa*, 622 F.3d 739, 743 (7th Cir. 2010*). A procedural error occurs, for example, when the district court fails to calculate the proper guidelines range, treats the guidelines as mandatory, bases its sentence on clearly erroneous facts, fails adequately to consider the sentencing factors set out in § 3553(a), or provides an insufficient explanation of its sentencing decision. *Gall*, 552 U.S. at 51; see *United States v. Aljabari*, 626 F.3d 940, 950 (7th Cir. 2010). To provide an explanation that demonstrates adequate consideration of the § 3553(a) factors, a district court must say enough to allow meaningful appellate review, but it need not mention every single factor, so long as we have confidence that the sentencing process was fair. See *Gall,* 552 U.S. at 50*; Figueroa*, 622 F.3d at 744. Each case is different, however, and the "amount of explanation needed in any particular case depends on the circumstances." *United States v. Curby*, 595 F.3d 794, 797 (7th Cir. 2010); see *Rita v. United States*, 551 U.S. 338, 357 (2007).

Here, before considering Lua-Guizar's reasons for a lighter sentence, the district court carefully analyzed each of his prior crimes, some of which Lua-Guizar wanted to exclude for sentencing purposes. For the cocaine-related offenses, the court acknowledged that Lua-Guizar was more likely an addict than a serious drug dealer. Still, the court was "not convinced that the substance abuse problem mitigate[d] the gravity" of the 2001 and 2002 convictions, because the only thing that seemed to end Lua-Guizar's cocaine use was incarcera-

tion. Taking that into account, the court found Lua-Guizar to be "at a high risk of returning to the use of illegal drugs at such time as he is released from custody." The district court acknowledged that his traffic offenses were "considerably less serious than the two drug-related crimes," but not so insignificant that they could be "ignored in sentencing." This analysis provided the backdrop for the district court's response to both of the reasons Lua-Guizar offered in support of a lowered offense level.

On the cultural assimilation point, Lua-Guizar argues that the court inadequately explained its reasons for not giving him the downward adjustment. The record, however, does not bear this out. The judge explained that "[t]he Court declines to consider Mr. Lua-Guizar's cultural assimilation to lower his sentence. First, the amendment will not go into effect until later this year. Second, the downward departure is authorized only if it, quote, is not likely to increase the risk to the public of further crimes of the defendant, end quote." Viewed in context, this explanation was sufficient. The first reason relates directly to § 3553(a)(4)(A)(ii), which directs judges to apply the guidelines "in effect on the date the defendant is sentenced." See *United States v. Baretz*, 411 F.3d 867, 874 (7th Cir. 2005). While the court could have considered the pending amendment, it was not required to do so. It thus committed no procedural error by applying the guidelines in effect at the time of sentencing.

The second reason comes directly from the language of the then-pending amendment:

> There may be cases in which a downward departure may be appropriate on the basis of cultural assimilation. Such a departure should be considered only in cases where (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) *such a departure is not likely to increase the risk to the public from further crimes of the defendant*.

U.S.S.G. § 2L1.2 cmt. n.8 (2010) (emphasis added). Even if the amendment had taken effect, the court would have been obliged to consider subpart (C), which we have emphasized. And it appears that this is exactly what it did. The court explained that, in light of Lua-Guizar's track record, it found unpersuasive his argument that he was unlikely to recidivate. Using the same risk-based language as the pending application note, the district court said that it was unconvinced that Lua-Guizar would not again return to cocaine use, which he had done even up to the day of his final arrest in 2009. In addition, the application note further advises a sentencing court to consider the "seriousness of the defendant's criminal history," and "whether the defendant engaged in additional criminal activity after illegally reentering the United States." *Id.* The district court did all that here. We find no procedural error in its approach to Lua-Guizar's cultural assimilation argument.

That leaves his argument based on the non-existence of a fast-track procedure in the Northern District of Illinois. His basic point was that the district court failed to give this argument adequate consideration. Given the lengthy discussion of the issue by the district court, which quoted directly from section 5K3.1, it is plain that the district court did not overlook this argument. What Lua-Guizar is really saying, we believe, is that the court misunderstood its discretion to make adjustments on this basis—a point that was not clear at the time of Lua-Guizar's sentencing. Compare *Spears v. United States*, 129 S. Ct. 840 (2009); *United States v. Corner*, 598 F.3d 411, 415 (7th Cir. 2010) (*en banc*) (holding that "district judges are at liberty to reject any Guideline on policy grounds—though they must act reasonably when using that power"), with *Galicia-Cardenas*, 443 F.3d at 555 (limiting a district judge's discretion).

Fast-track procedures are not available in every district; Congress has instead made their availability contingent upon approval by the Attorney General. See Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, § 401(m), 117 Stat. 650, 675. The Attorney General must designate a judicial district for a specific crime, and such a designation is reserved for offenses "whose high incidence within the district has imposed an extraordinary strain on the resources of that district as compared to other districts." H.R. Rep. No. 108-48, at 7 (2003). Most fast-track programs have been authorized for "illegal reentry after deportation," and all other crimes that are allowed to receive fast-track disposition are immigration-related.

See Memorandum from David Ogden, Deputy Att'y Gen., Dep't of Justice, to U.S. Attorneys (May 29, 2009), reprinted in 21 FED. SENT. REP. 318, 337-38 (June 2009). Yet even in a fast-track district, the downward departure is not automatic. The request for a reduced sentence must be made "[u]pon motion of the Government," and the district court is not required to grant such a request if it considers the reduction to be inappropriate given the facts of a particular case. U.S.S.G. § 5K3.1 (2009). The Northern District of Illinois, where Lua-Guizar was convicted, does not have an early disposition program, and there are none in the Seventh Circuit. See Ogden, *supra*, at 337-38; *Reyes-Hernandez*, 624 F.3d at 412. For these reasons, the Sentencing Commission has recognized that treating defendants differently on the basis of their geography alone—a morally arbitrary factor—has the potential to create unwarranted sentencing disparities under § 3553(a)(6). See *Reyes-Hernandez*, 624 F.3d at 410-11 (citation omitted).

As we mentioned, at the time Lua-Guizar was sentenced the law of this circuit prohibited a district court from considering the lack of a fast-track option an "unwarranted sentencing disparity" under § 3553(a)(6) because, in setting up the system of district-by-district authorization, Congress contemplated the disparity based upon geography, which we reasoned precluded a finding that such a disparity is "unwarranted." *Galicia-Cardenas*, 443 F.3d at 554. In light of *Kimbrough*, *Spears*, and *Corner*, we switched course in *Reyes-Hernandez*, and held that sentencing courts may consider the disparity in applicable guidelines ranges between similarly situated

defendants in districts with a fast-track program and districts without a fast-track program. 624 F.3d at 416-17; see also *United States v. Guajardo-Martinez*, 635 F.3d 1056, 1062 (7th Cir. 2011). We explained further what kind of showing would be necessary in our recent decision in *United States v. Sandoval Ramirez,* Nos. 09-3932, 10-2190, 10-2689, 2011 WL 2864417, at *5-*9 (7th Cir. July 20, 2011). Here is the summary of our conclusion:

> [A] defendant claiming entitlement to a lower sentence because of a perceived fast-track "disparity" must promptly plead guilty, agree to the factual basis proffered by the government, execute an enforceable waiver of specific rights before or during the plea colloquy, establish that he would receive a fast-track sentence in at least one district offering the program, and submit a thorough account of the likely imprisonment range in the districts where he is eligible, as well as a candid assessment of the number of programs for which he would not qualify.

*Id.* at *9. We recognize that this approach may be in some tension with, and more extensive than, the showing required in other circuits. See, *e.g.*, *United States v. Arrelucea-Zamdio*, 581 F.3d 142, 156-57 & n.13 (3d Cir. 2009) (holding that defendant need only offer to accept a plea agreement forfeiting rights as if in a fast-track district and refusing to require "a more extensive showing"); *United States v. Rodriguez*, 527 F.3d 221, 231 (1st Cir. 2008) (holding that a defendant "cannot be expected to renounce his right to mount a defense" by actually waiving his rights in order to demonstrate a possible fast-track

disparity). We need not, however, resolve this tension in order to dispose of this appeal. At a minimum, *Sandoval Ramirez* sheds light on when a district court might be at risk of abusing its discretion when it rejects a fast-track argument. In the end, this is a discretionary factor like many others. Nothing prevents a district court from finding, as Congress did, that geographical disparity alone is not a compelling reason to treat all defendants as if they were in fast-track districts. See *Reyes-Hernandez*, 624 F.3d at 421.

The district court here did a remarkably good job with this argument, considering the unsettled state of the law at that time. It explicitly acknowledged the premise of Lua-Guizar's argument—that "he should be sentenced with some recognition of the fast track jurisdictions that provide for lower sentences than his prosecution in this district" and wanted to "be sentenced as if this were a fast track jurisdiction in order to avoid a sentencing disparity." The district court then responded to Lua-Guizar's argument with three reasons why it would not grant his request, but the final one is dispositive:

> Third, this Court, while recognizing that the sentencing guidelines are advisory and that it would have discretion to reduce Mr. Lua-Guizar's sentence on this basis if it chose to do so, does not believe that Mr. Lua-Guizar's sentence should be reduced in recognition of the existence of other fast track jurisdictions. The court believes that the sentencing range reached by the use of the guidelines is perfectly

suitable to Mr. Lua-Guizar's offenses and his criminal history.

This was all the court needed to say. It specifically recognized that it had the discretion to depart from the guidelines if it chose, but it found such a move to be unwarranted. As we have emphasized, even in a district with an early disposition program, a downward adjustment is not automatic, and a defendant's criminal history is an appropriate factor to consider at this juncture. *Guajardo-Martinez*, 635 F.3d at 1062. The district court committed no error.

For these reasons, we AFFIRM the judgment of the district court.