**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 4, 2011
Decided October 19, 2011

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 11-1302

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 10 CR 221-1 |
| JESUS MACIAS-ZAMORA, *Defendant-Appellant*. | Charles P. Kocoras, *Judge*. |

**O R D E R**

Jesus Macias-Zamora pleaded guilty to being in the United States illegally after removal, 8 U.S.C. § 1326(a), and was sentenced to 41 months' imprisonment, the low end of the guidelines range. In challenging this sentence, he argues that the district court failed to adequately address and embrace his arguments in mitigation. We conclude that the court did all that was necessary to respond to those arguments and thus affirm the sentence.

Macias-Zamora first entered the United States without authorization in 2001, when he was 16 years old. Within five years he was convicted in Illinois of aggravated battery after he and three accomplices attacked and beat a man. Macias-Zamora received 24 months' probation for that crime. In 2009 immigration officials identified him as a member of the Latin Kings street gang and removed him to Mexico. He returned to the United States

unlawfully four months later and was discovered by local authorities in Illinois, who transferred him to federal officers. He was charged with violating § 1326(a) and pleaded guilty within four months.

A probation officer calculated a total offense level of 21 and a criminal-history category of II, yielding a guidelines imprisonment range of 41 to 51 months. This calculation includes a 16-level increase under U.S.S.G. § 2L1.2(b)(1)(A)(ii) for the aggravated battery, a crime of violence. Although that conviction garnered only one criminal-history point because of the probationary sentence, *id.* § 4A1.1(c), Macias-Zamora's criminal-history score was increased to 3 (and the category bumped up to II) because he committed the § 1326(a) violation while still on probation.

Defense counsel submitted a memorandum urging the district court to sentence Macias-Zamora below the guidelines range for five reasons. First, counsel asserted that Macias-Zamora had returned to the United States to be with his common-law wife and two children living in Illinois. Second, counsel argued that the absence of a fast-track program for illegal-reentry cases in the Northern District of Illinois creates an "unwarranted sentencing disparity" because, he asserted, defendants in fast-track districts are offered "up to" a four-level sentencing reduction "in exchange for early disposition." Third, counsel contended that the "collateral consequences" of Macias-Zamora's status as an illegal alien, including ineligibility for certain prison programs, "represent a severe punishment in and of themselves." Fourth, counsel asked for a reduction based on "cultural assimilation," *see* U.S.S.G. § 2L1.2 cmt. n.8. Finally, counsel attacked the 16-level upward adjustment in § 2L1.2(b)(1)(A)(ii) as unsupported by empirical evidence.

The government submitted a written response to Macias-Zamora's contentions. The majority of that response focused on the fast-track issue. Fast-track programs, the government explained, have certain universal eligibility requirements: A defendant must, among other things, plead guilty promptly and waive his rights to appeal and to seek postconviction relief under 28 U.S.C. § 2255. Macias-Zamora had not met any of these conditions. Fast-track programs also offer varying degrees of sentencing reductions, the government noted, often based on the severity of a defendant's prior convictions. The government reminded the district court that it has discretion to reject fast-track arguments and urged the court to defer to the exercise of prosecutorial discretion in deciding which districts need a fast-track program. The government also countered the cultural-assimilation argument by pointing out that Macias-Zamora did not come to the United States as a child but as a teenager (and without his parents) and never attended school here or took any steps toward lawful residency; rather, he engaged in a violent crime and joined a notorious street gang.

At the sentencing hearing, defense counsel discussed the points raised in his sentencing memorandum and added one more: that Macias-Zamora's criminal-history category is overstated because his only conviction was the one for aggravated battery. Counsel did not further develop the fast-track argument, but simply said that "[i]t is something the Court can give a little bit of weight to, no weight to, but . . . can at least take into account." Counsel conceded that Macias-Zamora was a member of the Latin Kings but asserted that he was neither "a hardcore gangbanger" nor "really involved with that street gang for a long period after his conviction of aggravated battery." Macias-Zamora did not testify, though in his allocution he did say that he returned to the United States because of his children.

The district court sentenced Macias-Zamora within the guidelines range to 41 months' imprisonment. In explaining that sentence, the court observed that Macias-Zamora's children and common-law wife "are innocents" and will "suffer probably tremendously." But Macias-Zamora had shown "absolutely no basis" to impose a sentence below the guidelines range, the court concluded, because this case "is far different than that traditional, typical story of an illegal immigrant." The court noted that, although Macias-Zamora downplayed his "prior criminality," this "900-pound gorilla in the room" could not be "erased off the chalkboard that easily." The court emphasized that Macias-Zamora had joined a violent street gang, which "is not what America is about," and did "not appreciate the benefit of the gift the judge gave him" when he was sentenced to probation for the aggravated battery. The district court rejected Macias-Zamora's other arguments in mitigation. The 16-level upward adjustment, the court reasoned, "follows commonsensically" from the "synergistic effect" of an illegal return to the country following a crime of violence. And as for the fast-track argument, the court acknowledged the existence of fast-track programs "in certain states" but noted that Macias-Zamora "did not come to those states, he came to this state."

In challenging his sentence, Macias-Zamora rehashes the six mitigating arguments he made at sentencing. He says that the district court failed to "properly take into account" any of those arguments.

Macias-Zamora first argues that the district court should have reduced his sentence based on "cultural assimilation" because he lived in the United States from ages 16 to 23, has a family here, and worked here "for almost a decade." But the provision he relies on, Application Note 8 to § 2L1.2, applies only to defendants who "resided continuously in the United States from childhood" and cautions that a sentence reduction "should be considered only" if it "is not likely to increase the risk to the public from further crimes of the defendant." *See United States v. Lua-Guizar*, No. 10-3042, 2011 WL 3800125, at *4 (7th Cir. Aug. 26, 2011). The district court did not use the words "cultural assimilation" but

nonetheless undercut this argument by emphasizing that Macias-Zamora, as evidenced by his violent past and gang membership, "did not appreciate" the "lenient sentence" he previously received and had not been "deterred from anything." Moreover, although Macias-Zamora cited Application Note 8 as the basis of his motion, he does not fit within the plain language of that provision, having spent his childhood primarily in Mexico.

Second, Macias-Zamora faults the district court for not taking into account that, as an illegal alien, he is ineligible for "certain early-release programs" or a "minimum security designation." His illegal status, he contends, "renders his sentence unreasonably harsh when compared with defendants convicted of other crimes within the same sentencing range." Although the court never commented on these particular consequences at the sentencing hearing, neither did Macias-Zamora, who mentioned them only briefly in his sentencing memorandum. Sentencing judges are expected to address a defendant's nonfrivolous, principal arguments in mitigation, but that is all. *See United States v. Martinez*, No. 10-3028, 2011 WL 2410467, at *4 (7th Cir. June 16, 2011); *United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010); *United States v. Cunningham*, 429 F.3d 673, 678–79 (7th Cir. 2005). As we have noted, every alien in the country illegally is ineligible for these prison programs, so this stock argument, made "routinely, and increasingly," is "not a substantial one requiring explicit discussion by the district court." *United States v. Mendoza*, 576 F.3d 711, 722 (7th Cir. 2009).

Third, Macias-Zamora challenges the district court's refusal to reduce his sentence based on the purported disparity created by the absence of a fast-track program in the Northern District of Illinois. As we recently emphasized, "[n]othing prevents a district court from finding, as Congress did, that geographical disparity alone is not a compelling reason to treat all defendants as if they were in fast-track districts." *Lua-Guizar*, 2011 WL 3800125, at *5; *see United States v. Reyes-Hernandez*, 624 F.3d 405, 421 (7th Cir. 2010). The court here did exactly that, reasoning that Macias-Zamora did not deserve a fast-track reduction because "he did not come" to a state with a fast-track program. What's more, the court was not required to respond to this argument: Macias-Zamora met none of the steps necessary to show that he was similarly situated to a defendant in a fast-track district, so his claim of disparity was illusory. *See United States v. Ramirez*, Nos. 09-3932, 10-2190 & 10-2689, 2011 WL 2864417, at *9 (7th Cir. July 20, 2011).

Fourth, Macias-Zamora argues that his guidelines range "over-represents" his criminal past because "a single offense"—the aggravated battery—"profoundly altered his sentencing range." His prior conviction indeed affected his guidelines range: The battery prompted a 16-level increase to his offense level and—because he reentered the United States while on probation for that crime—netted him a criminal-history category of II. The government points out, however, that Macias-Zamora is not contesting the calculation of his

guidelines range and "ignores the brutal factual basis of his crime." The district court, too, observed that Macias-Zamora was ignoring his violent past "pretty much altogether," despite it being "the 900-pound gorilla in the room." Macias-Zamora not only joined a violent street gang, the court noted, but received a "gift" by getting only probation for his aggravated-battery conviction. "A district court is never required to accept a defendant's arguments for a lower sentence," *United States v. Moreno-Padilla*, 602 F.3d 802, 812 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 897 (2011), and the court here justifiably rejected the argument that Macias-Zamora's criminal past was overstated.

Macias-Zamora's fifth argument—that the district court failed to scrutinize the lack of empirical evidence for the 16-level increase in § 2L1.2(b)(1)(A)(ii)—is without merit. District courts "need not even *consider* the argument" that a guideline should be effectively ignored on the ground that it was enacted without sufficient deliberation. *Ramirez*, 2011 WL 2864417, at *5. Moreover, the district court, by defending the commonsense nature of the 16-level increase, adequately explained its decision to impose a sentence within the guidelines range. *See Moreno-Padilla*, 602 F.3d at 814.

Finally, Macias-Zamora lays out his family circumstances and, without asserting any specific error by the district court, argues that these circumstances make his sentence "greater than necessary." The court acknowledged that "these kinds of cases," where innocent family members are affected, tug at the "heartstring" of "any federal judge." But the court did not overstep its bounds in concluding that, because of Macias-Zamora's violent past, a sentence within the guidelines range "is absolutely necessary in this case." *See United States v. Curtis*, 645 F.3d 937, 943 (7th Cir. 2011); *United States v. Meschino*, 643 F.3d 1025, 1031 (7th Cir. 2011). This last contention, like the others, is without merit.

AFFIRMED.